JOHN O. WILSON et al., complainants-appellants,

*v.*

WILLIAM H. WINDOLPH et al., defendants-respondents.

WILLIAM H. LIPPINCOTT et al., executors, &c., et al., complainants-appellants,

*v.*

WILLIAM H. WINDOLPH et al., defendants-respondents.

[Submitted May 11th, 1928.   Decided October 15th, 1928.]

1. Specific performance will not be decreed by a court of equity unless the existence and terms of the contract be clearly proved.

2. Alteration, in the legal sense, is the change in some feature of an existing and complete legal instrument.

3. It is an elementary rule of the law of contracts that a contract does not come into existence until the proposition is met by an acceptance which corresponds with it entirely and adequately.

4. A contract for sale and purchase of land, after execution by vendees, was changed by vendors by substituting a different mortgagee in the proposed purchase-money mortgage, and then signed by them. *Held*, that no contract was legally made.

On appeals from decrees advised by Vice-Chancellor Leaming.

*Messrs. Bleakly, Stockwell & Burling,* for the appellants.

*Mr. Philip Wendkos,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The same evidence, with the exception of the particular documents giving rise to the suits, was used in both actions,

and the decision in one controls that in the other. The *Wilson Case* will be particularly treated herein.

It is a vendor's suit for specific performance of an alleged written contract to purchase real estate. When the case came to a hearing it developed almost immediately that the so-called "contract," complete in form, had been presented first for signature to the vendees and signed by them, and then taken by an intermediary to the vendors for them to sign. Mrs. Laura Evans, one of those named as vendors, then objected to the clause relating to a purchase-money mortgage as contained in the paper, and which provided that the mortgage should be by the "parties of the second part to the parties of the first part" because her husband was one of the "parties of the first part," she was on bad terms with him, and so she refused to sign. After some negotiations among the parties of the first part, of which the vendees had no actual notice or knowledge, it was agreed that the mortgage should read to Mrs. Evans alone, and accordingly her name was interlined in the instrument already signed by the vendees, so that the clause read *"to Laura Evans one of the said parties of the first part."* In that form the vendors all signed; but of course it is plain that neither the vendees nor the vendors executed the paper that had been executed by the other party. When this fact was made plain, the vice-chancellor halted the hearing, heard argument, considered the matter over the noon recess, and on reconvening the court dismissed the vendors' bill of complaint; and counsel stating that the other suit was precisely similar and adopting for that the testimony already taken, he dismissed that bill also. His conclusions were oral and are as we think not reported.

We consider that his disposition of the matter was entirely correct. The appellants argued before the vice-chancellor that as the several manifold originals of the paper, signed by complainants after the change, had been delivered to the several defendants and accepted by them without objection, they must be demed to have assented to them; and that even although they knew nothing of the matter for sometime afterwards, running into months in some cases, reten-

tion of the paper after discovery, without repudiation, spelled acceptance. The further point is made here, though apparently not made below, that Bitting, the go-between who went back and forth between the several parties, was the agent of the defendants and that his knowledge of the change at the time it was made was theirs, and hence they were bound by it. All this we deem too uncertain and nebulous to support a decree for specific performance at the instance of a vendor. Specific performance will not be decreed unless the existence and terms of the contract be clearly proved. If it be reasonably doubtful whether the contract was finally closed, equity will not interfere. *Brown* v. *Brown, 33 N. J. Eq. 650.*

On this branch of the case, therefore, we conclude that the proof touching assent of defendants to the paper in its modified form is insufficient to sustain a decree. As to Bitting, he was merely a runner for a real estate broker and his task was confined to bringing the parties together on the terms; something which he conspicuously failed to do.

This brings us to the fundamental ground for denial of the aid of the court; and, as we view it, that ground is the non-existence of any complete contract. The vice-chancellor in his oral deliverance spoke of alteration as a bar to recovery, and gave some attention to the question of materiality of an alteration. Of course, there was an alteration of the paper in the ordinary or physical sense; but as we understand the matter, alteration in the legal sense relates wholly to the change in some feature of a paper already legally complete. This was the situation, for example, in the leading case of *Master* v. *Miller, 4 T. R. 320; 2 E. R. C. 669,* and in *Hunt* v. *Gray, 35 N. J. Law 227,* cited by the vice-chancellor, and we think the cases digested under the heading of alteration will be found to refer to completed writings. The present case is not in that class, but as we view it, comes under the elemental rule that the bargain or promise to be enforced, whether written or oral, must have been completely determined between the parties, and its terms definitely ascertaind. *Brown* v. *Brown, supra.*

"There is no contract unless the parties thereto assent; and they must assent to the same thing in the same sense. * * * It becomes a contract only when the proposition is met by an acceptance which corresponds with it entirely and adequately. * * * The assent must comprehend the whole of the proposition; it must be exactly equal to its extent and provisions, and it must not qualify them by any new matter * * * there are cases where the answer * * * departs from the proposition * * * or substitutes for the contract tendered, one more satsifactory to the respondent. In these cases there is no assent, and no contract. * * * An answer or a compliance has been sometimes held insufficient to make a contract where the difference in terms between the parties did not seem to be very important. In fact, the court seldom inquires into the magnitude or effect of this diversity; if it clearly exist, that fact is enough. 2 *Pars. Cont. ch. 2 § 1.*"

These principles are illustrated by such cases as *Jordan v. Norton, 4 M. & W. 155; 6 E. R. C. 141; Peltier v. Collins, 3 Wend. 459; Gross v. Yeskel, 98 N. J. Eq. 64; affirmed, 100 N. J. Eq. 293; 13 Comp. Stat. p. 281 § 66.* Tested by these rules, there was no contract between the parties.

It will have been observed that, according to Professor Parsons, the courts pay little attention to questions of materiality in this class of cases. We need not stop to consider what stand to take touching this feature, as we are clear that the change was material. The paper as the vendees signed it called for a mortgage to the vendors jointly; there were three vendors: Mrs. Evans was one, her husband another, the third was William B. Lippincott. As modified before vendors signed, it required a mortgage to Mrs. Evans alone, and for the important reason that she wished to control it alone and that her husband should have nothing to do with it. This might well make all the difference to the vendees-mortgagors between considerate treatment from joint mortgagees and harsh treatment and a demand for the pound of flesh from the substituted mortgagee. It is true, of course, that the mortgage made under the contract as drawn might have come to Mrs. Evans by assignment, but in view of the evidence and as a practical matter the chances were strongly to the contrary, and the difference may well have been of great consequence to the vendees.

As already intimated, the dismissal of the bill was right, and the decree is therefore affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.   15.

*For reversal*—None.