## COMMISSIONER OF INTERNAL REVENUE v. GREAT WESTERN POWER CO. OF CALIFORNIA.*

### No. 402.

Circuit Court of Appeals, Second Circuit.

July 22, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., for petitioner.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

During the taxable period the respondent was a public utility corporation of the state of California subject to the jurisdiction of the California State Railroad Commission. It kept its books on the accrual basis in accordance with the orders of said commission, and filed its income tax return on the accrual basis. The Board held that it was entitled to deduct as a loss the entire unamortized discount, expenses of issuance, premiums paid, and expenses of retirement of certain of its bonds retired in 1924 in accordance with the terms under which the bonds had been issued. At that time the holders exercised their option to receive, and did receive, for the called bonds, a cash premium of 5 per cent. and bonds of the respondent of another series

*Writ of certiorari granted 56 S. Ct. 179, 80 L. Ed. ——.

of the same par value. To review this decision the Commissioner filed the instant petition.

During 1921, the respondent issued and sold its general lien 8 per cent. gold bonds dated February 1, 1921, and due February 1, 1936, to the face value of $2,500,000. These bonds were secured by what is known as its general lien indenture, dated February 1, 1921, wherein its property was, subject to prior encumbrances, mortgaged and conveyed in trust for the benefit of these bondholders. These bonds were sold at a discount of $150,000, and the expense of their issuance was $22,283.54. They were subject to call by the respondent before maturity, and, if called, the holders were entitled at their option to receive in exchange for them 105 per cent. in cash or a 5 per cent. premium in cash and bonds known as series B 7's of the same par value.

The bonds known as series B 7's were issued by the respondent in 1921, were dated August 1, 1920, and were due August 1, 1950. This issue was of the par value of $8,500,000. Of these bonds $2,500,000 in par value were delivered to the trustees under the general lien indenture and held by such trustees as additional security for the bonds known as general lien 8's, and so held that they might be available for distribution to such holders of the general lien 8's as should elect to take them if and when the 8's should be called. Of the remainder of the issue series B 7's, $1,000,000 in par value were sold to the public for cash at a discount of $100,000, and the remainder delivered to trustees as additional security for another issue of bonds not here involved.

By December 31, 1923, the respondent had purchased for cash and retired its general lien 8's of the par value of $11,000 and had charged off the proportionate amount of unamortized discount and expense of issuance as a loss in the year of retirement. This left general lien 8's outstanding to the face value of $2,489,000 on May 8, 1924, and on that date the respondent's board of directors passed a resolution for the redemption of the remainder of the issue. On August 1, 1924, holders of these bonds to the face value of $2,354,000, having elected to exercise their option to take in exchange series B 7's plus the 5 per cent. premium in cash, were paid a cash premium of $117,725 and given series B 7's par for par for their general lien 8's which were then retired. The unamortized discount applicable to the bonds so converted was $126,176.97 as of August 1, 1924, and the expense of conversion was $1,461.05. The respondent attempted to take as a deduction in 1924 the sum of the three items, viz.: The premium paid, the unamortized discount, and the expense of conversion—making in all $245,363.02. The Commissioner, however, determined that such amount should be amortized over the life of the series B 7's exchanged for the general lien 8's, and allowed only $2,027.96 to be deducted in 1924. The decision of the Board reversing the Commissioner and allowing the entire deduction claimed is the only point now up for review.

The remainder of the general lien 8's outstanding as of August 1, 1924, after the conversion above mentioned were then purchased by the respondent for cash and retired. The Commissioner now concedes that the premium paid on those bonds together with the unamortized discount and the expense of retirement applicable to them was an allowable deduction from 1924 income.

So far as was necessary, the $2,500,000 in face value of the series B 7's which were delivered to the trustees under the general lien indenture were used to make the exchange with the holders of $2,354,500 in face value of the general lien 8's. Of the remainder of $145,500 in face value of the series B 7's held by those trustees, $11,000 in face value were returned to the respondent because of its previous purchase from the public for cash and the retirement of that amount face value of general lien 8's, and the remainder was returned to the respondent because of its redemption for cash after the call date of a like amount par value of the 8's. None of these series B 7's so returned to the respondent was reissued.

The respondent's income for 1924 was reported in a consolidated return filed in the name of Western Power Corporation, 25 Broad street, New York, N. Y.

 It is clear, as the Commissioner has conceded in respect to the general lien 8's retired for cash before maturity, that the unamortized discount plus premium paid plus the expense of retirement is an allowable deduction in the year of retirement. Reg. 65, art. 545 (3). This regulation so provides and has been in force since it was promulgated under the Revenue Act of 1924. In re-enacting the applicable statute

since then, Congress has indicated its approval of this administrative interpretation of the law. National Lead Co. v. United States, 252 U. S..140, 40 S. Ct. 237, 64 L. Ed. 496; Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 51 S. Ct. 510, 75 L. Ed. 1183; Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318. See, also, United States v. Kirby Lumber Co., 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. 131.

The problem before us is to determine whether a like complete deduction is allowable in the same year when the retirement is not wholly for cash but is to the extent of the par value an exchange of bonds for bonds in accordance with the terms under which the retired bonds were issued. This precise question has been decided in favor of the respondent in San Joaquin Light & Power Corp. v. McLaughlin, 65 F.(2d) 677 (C. C. A. 9). It is also said that Commissioner v. Coastwise Transportation Corporation, 62 F.(2d) 332 (C. C. A. 1), see, also, Id. (C. C. A.) 71 F.(2d) 104, is to the same effect but in that case the exchange held to result in taxable income was not made pursuant to the contract under which the retired notes were issued, but on the contrary merely in accordance with the voluntary agreement of the parties at the time of retirement to exchange those notes for a lesser amount in face value of bonds. The acceptance of bonds for notes, under any conditions, was no part of the original note contracts. Moreover, the exchange did reduce the outstanding indebtedness of the taxpayer to the amount of the difference between the face value of the notes and that of the bonds substituted for them. Whatever uncertainty there was as to whether the substituted bonds were the actual equivalent of a payment in cash was immaterial, since the transaction made it impossible for the retirement of the notes ever to cost the taxpayer more than the face of the bonds exchanged for them, and so, to the extent of the difference between the face value of the notes and that of the bonds, the taxpayer received at least as much benefit as it could have received if it had paid the face value of the bonds in cash to retire the notes. Had it paid such cash for them, the difference would have been taxable income. United States v. Kirby Lumber Co., supra.

 By calling the general lien 8's before maturity this taxpayer made available to the holders of the general lien 8's the option contained in the terms of those bonds to compel the taxpayer to issue to them series B 7's as part of the price of redemption. Those who did so require series B 7's to be delivered to them were merely satisfied pro tanto by the receipt of different obligations of the taxpayer. The taxpayer by so doing received in fact for its series B 7's thus placed in the hands of the public the net amount it had received for the 8's so retired less the expense of issuing those series B 7's and the additional cost of retiring the 8's so exchanged. The difference between the face value of the 7's and the amount received for them represents the unamortized discount upon those bonds. It will become a realized loss when the bonds are paid at par and, of course, there will be some loss when, if ever, the bonds are retired for less than par but for more than what the taxpayer received for them. The decisive point now is that in 1924 the general lien 8's were not paid so as to establish a deductible loss. The taxpayer substituted one form of obligation for another, leaving the debt to the extent of the face value of the substituted bonds still a debt. Only the evidence of that debt was changed. The amount which will eventually have to be paid to discharge the debt was not determined in 1924 nor will it be until some future time. Then only will a deductible loss, or perhaps a taxable profit, be realized. Then, if there is a loss, it will be realized from the standpoint of taxation. Losses must be realized to be deductible just as income must be realized to be taxable. Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720.

 But the annual cost of the use of money which the taxpayer has really received for its series B 7's is represented not only by the interest it pays on the bonds but the discount, premium, and expense of issuance. Helvering v. Union Pacific R. Co., 293 U. S. 282, 55 S. Ct. 165, 79 L. Ed. 363. In so far as discount is concerned, there is a direct provision for its amortization over the life of the bonds. T. R. 45, art. 545 (3) (a). It is thus "realized" from year to year. While there is no such direct authority for the pro rata deduction of premium and issuance expense, it may be accrued, and, when a taxpayer properly makes a return on the accrual basis, as this taxpayer did, such expense may also be amortized over the life of the bonds and proportionate annual deductions allowed.

Helvering v. Union Pacific R. Co., supra. This annual deductible expense has been recognized by the Commissioner for the year in question. What is claimed by the taxpayer as a deductible loss for that year must for the reasons stated await deduction when, if ever, any part of it becomes a realized loss. Otherwise it will be deductible only in pro rata annual installments as part of the expenses of the business.

Decision reversed, and deduction disallowed.