Fourth Judicial District Court of Union County.

ROBERT JOHNSTON, PLAINTIFF, v. EMILY DePUY, DEFENDANT.

Decided December 31, 1936.

For the plaintiff, *Earl A. Merrill*.

For the defendant, *August C. Nash*.

MORRISON, D. C. J.   This controversy arises out of a suit for a month's rent allegedly due under a lease made August 20th, 1936, between the plaintiff, as lessor, and the defendant, as lessee, renting unto the defendant a one-family dwelling and garage at No. 628 Summit avenue, Westfield, New Jersey, for a term of one year commencing October 1st, 1936, at the annual rental of $780 payable $65 monthly, in advance. The defense to the action is the alteration of the said lease by the plaintiff lessor after the defendant lessee had executed the same.

The salient facts are as follows:

The defendant was in possession of the premises at No. 628 Summit avenue, Westfield, New Jersey, when three duplicate prepared lease forms containing the terms as hereinafter stated (together with other terms hereinafter set forth) were sent to her for signature. She received said forms in the middle of August, 1936. After signing, she returned the lease and copies to the plaintiff for his signature. She received a

signed copy by mail, but her testimony is hazy as to the time she received it. On September 6th, 1936, the day before Labor Day, she first noticed that her copy contained alterations and changes therein which did not exist when she had signed the document. On September 8th, 1936, the Tuesday following Labor Day, she called the office of Dawson & Johnstone, Incorporated, real estate brokers who were the agents for the plaintiff in this transaction and spoke to Mr. Johnstone, telling him that the terms of the lease were changed and that the same were unacceptable to her. Nothing further was done by either the plaintiff or defendant with respect to the lease. On September 30th, 1936, the day before the commencement of the term of the lease at bar, the plaintiff moved from the premises.

I find as a fact that the five ink interlineations appearing on the lease were made by the plaintiff subsequent to the defendant's signing of the instrument. Whether or not all of the said interlineations are of such a character that would vitiate the instrument need not here be decided. It is sufficient to the determination of this matter to consider the interlineation of the following clause:

"It is further understood and agreed between the parties hereto that the said Landlord will put the heater, range, and plumbing in good order, and Tenant shall keep same in like good order, wear and tear arising from reasonable use excepted."

The above clause which was printed was entirely crossed out by pen, with the initials of the plaintiff, "R. J." appearing alongside on the margin.

Does the crossing out of the above clause constitute an alteration that would render the lease unenforceable? An alteration of a written instrument, strictly speaking, is some material change made upon the face of the instrument itself by one of the parties thereto without the consent of the other. *Hunt* v. *Gorenberg*, 9 *N. J. Mis. R.* 463; 155 *Atl. Rep.* 881.

That a material alteration of a lease, after its execution by one of the parties without the consent of the other party renders it unenforceable against the non-consenting party has been determined in many jurisdictions. Thus a lessor who

has altered the lease destroys his right to recover under the executory clauses, or the rents reserved. See 2 *Corp. Jur.* 1187 (26) and cases cited.

A perusal of the clause in question renders obvious that its elimination from the lease changes the legal import and effect of the instrument. The landlord, under this clause, assumed the duty to put the heater, range and plumbing, in the demised premises in good order. The law of this state imposed no such duty upon him. My conclusion is that this alteration changed the legal effect of the lease and resulted in a different contract between the parties. *Wilson et al.* v. *Windolph et al.,* 103 *N. J. Eq.* 375; 143 *Atl. Rep.* 346; *Lippincott et al.* v. *Windolph et al.,* 103 *N. J. Eq.* 275; 143 *Atl. Rep.* 346.

The plaintiff contends, however, that though there be an alteration this defense is unavailing since the defendant ratified the altered instrument. No express ratification is relied upon. It is urged that ratification should be inferred from the following acts on the part of the defendant, to wit: On September 10th and September 24th, 1936, the following advertisement was inserted in the "Westfield Leader," a newspaper published and circulated in Westfield, New Jersey:

"Houses For Rent
Five bedrooms, oil heat, two blocks to station, garage; available Oct. 1st, 628 Summit Ave. Telephone Westfield 2-3237."

Plaintiff argues that the insertions of this ad indicated an acceptance or ratification of the lease in its altered form; that the offer to rent on October 1st implies that the defendant was in a position to rent the same on that date and that right could only have been attained by regarding the altered lease as binding upon her. I do not agree with this contention. While an altered instrument may be ratified after the alteration has been made, the acts from which ratification may be inferred should show affirmatively an intention to recognize the validity of the instrument. The acts or conduct must be such as are inconsistent with any other hypothesis than that he approved and intended to adopt what had been done without his consent. 2 *Corp. Jur.* 492 (112), 1256 (147-156).

Measured by this guide the acts of defendant in advertising the premises for rent fall far short of ratifying the lease *sub judice*. Other hypotheses than ratification are equally compatible. The defendant may have desired to ascertain whether she could sublet the premises before renewing negotiations on the terms of the lease. If success met her overtures, the making of an entirely new lease instead of adopting the altered lease, is not beyond contemplation. There is no evidence making either conclusion more probable. Then again, her acts may be construed as a desire to avoid embarrassment and litigation over the possible binding effect of the altered lease—the procuring of a new tenant by the defendant at the same or an increased rental would have resulted in no damage to the plaintiff and would have forstalled the present suit for rent. Other hypotheses are equally plausible. My conclusion is that the insertion of the ads by the defendant were not such acts from which ratification of the altered lease can be affirmatively inferred.

Lastly, it is urged that plaintiff received no notice or repudiation of the altered lease by the defendant until suit was brought. It is claimed that notice to Mr. Johnstone of repudiation of the altered lease was not notice to the plaintiff. Mr. Johnstone, as a member of the firm of Dawson & Johnstone, Incorporated, was unquestionably authorized to lease the property by the plaintiff and prepared the original lease forms on his firm's blanks. To admit that he had authority to lease but to deny that he had authority to receive communications concerning the acceptability of the terms of the lease to the lessee is paradoxical, to say the least. If he had the power to lease, *a fortiori*, he had the power to speak and be spoken to concerning the acceptance of the said lease. Without deciding whether or not a formal repudiation of the altered lease was necessary, I find that the defendant did repudiate the lease within a reasonable time to the plaintiff through his agent, Dawson & Johnstone, by Mr. Johnstone.

Let judgment be entered for the defendant.