**UNITED STATES ex rel. LYONS v. HINES,
Administrator of Veterans' Affairs.**

**No. 7108.**

United States Court of Appeals for the
District of Columbia.

Decided Feb. 6, 1939.

Petition for Rehearing Denied April 5, 1939.

Thos. E. Lyons, of Washington, D. C., pro se.

David A. Pine, U. S. Dist. Atty., and John J. Wilson, Asst. U. S. Atty., and James T. Brady and John M. George, of the Veterans' Administration, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

VINSON, Associate Justice.

The appellant is a World War veteran, with an honorable discharge, who, in service, was granted war risk (yearly renewable term) insurance in the sum of $10,000, payable in the event of the death or permanent and total disability of the soldier. After separation from service, the policy lapsed on several occasions for non-payment of premium, but in each instance it was reinstated. On July 1, 1927, the appellant reinstated and converted his yearly renewable term insurance into United States Government life (converted)—5 year convertible term policy—insurance. After a physical examination, reinstatement of this policy was granted under Regulation 15, now paragraphs 3078, 3079, and 3080 of the Regulations and Procedure of the Veterans' Administration. This policy lapsed about July 1, 1928, and was reinstated on September 1, 1928. Effective July 1, 1931 the veteran converted this five year convertible term policy into United States Government life (converted) insurance in the form of a twenty-payment life policy, and applied for and was granted the total disability provision authorized in sec. 311, of the World War Veterans' Act, as amended, 38 U.S.C.A. § 512b, which was included in the twenty-payment life policy, No. K 703,144, after a physical examination by the chief of the Insurance Medical Section of the Veterans' Administration. Each of the policies which the veteran successively held, war risk annual yearly renewable term, 5 year convertible term, and the twenty-payment life, contained provision for payment of disability benefits when permanent and total disability was shown to exist, and by statute there was included in the twenty-payment life policy the additional total disability benefits. Premiums were paid on the last policy (hereinafter termed the converted policy) through November, 1934, when it lapsed for non-payment of premiums.

The veteran applied for reinstatement of the converted policy of insurance on February 25, 1935, a date within three months of the due date of the premium in default. The life features of this policy, together with permanent and total disability provisions, were reinstated under sec. 304 of the Act, 38 U.S.C.A. § 515, after a medical examination to which the veteran objected, but the Administrator of Veterans' Affairs refused to reinstate the total disability provision, stating that the veteran was not then in good health, and that the total disability provision had been originally issued to the veteran in error. That he was not held to be in good health was due solely to the fact that the veteran had lost the sight of one eye. He suffered the loss in active military service.

Appellant filed a petition for a writ of mandamus in the District Court of the United States for the District of Columbia to compel the Administrator to reinstate converted policy, No. K 703,144, with the

total disability provision included therein, under sec. 304 of the Act. A rule to show cause was issued. Pleadings were filed, petition, answer, replication, and demurrer thereto, and arguments heard by the court, who discharged the rule and dismissed the petition, whereupon this appeal was taken.

Congress has provided two features in all forms of United States Government life insurance, a lump sum payment to beneficiaries at the death of the soldier, and monthly payments to the soldier himself when permanently and totally disabled.[1] The original act (40 Stat. 398, 409) provided for conversion, without medical examination, into such form of insurance as might be prescribed by regulations and as the insured might request, not later than five years after the termination of the war. The act of June 2, 1926 provided this insurance should be converted, without medical examination, not later than July 2, 1927 and that yearly renewable term (war risk) insurance should cease on that date, except when death or total permanent disability should have occurred before that date. The Act of May 29, 1928[2] provided a new section to the World War Veterans' Act, 1924, sec. 310, which made the provisions of United States Government life (converted) insurance available to all persons who had theretofore been eligible to apply for yearly renewable term insurance or United States Government life (converted) insurance, if such person was in good health and furnished evidence satisfactory to the Administrator to this effect.

This 1928 Act contained a new section, sec. 311, which provided an additional feature to be included upon application in all policies of United States Government life (converted) insurance. It was granted upon the veteran satisfying the Administrator that he was in good health. It was to be inserted in the policy. It provided the payment of the total and permanent disability benefits upon the showing that the insured was *totally,* but not *permanently,* disabled. The payments depleted the face value of the policy as though they were total and permanent disability benefits.

Prior to 1928 many veterans shown to be totally disabled for long periods of time, but unable to satisfy the permanent disability tests, were thereby not entitled to receive the benefits under the total and permanent disability provision of the United States Government life (converted) insurance policy. In virtue of this situation many such disabled veterans were compelled to permit their insurance to lapse, even though, later on, they met the permanent disability test. To meet this situation, and to provide such insured veteran a means of protecting his insurance and providing benefits during such periods of total, though not permanent, disability, Congress enacted sec. 311.[3]

The Act of July 3, 1930[4] amended sec. 311 of the 1928 Act. This sec. 311, as amended, provided for the payment of a stipulated disability benefit upon total disability for a period of four months or more. This benefit was to be paid independently of the provision of the permanent and total disability clause contained in the United States Government (converted) insurance policy and would not deplete the face value of that policy. If the insured became actually permanently and totally disabled he was to receive payment under the new total disability clause concurrently with the payments under the permanent and total disability clause then in the converted policy, payments under the latter only depleting the policy. This new disability feature was to be handled as a separate liability from the original provision for permanent and total disability so that the United States Government life insurance fund would not be assessed for any losses to be paid under the provision.[5]

It is necessary for us at the outset to consider the statutory direction to the Administrator contained in sec. 311, as amended, supra. The pertinent language is: "The director [Administrator] is hereby authorized and directed to *include* in United States Government life (converted) insurance policies" such total disability provision. This section provided for waiver of premiums when total disability existed, and in case an insured was found

---

[1] Act of October 6, 1917, c. 105, 40 Stat. 398, 409; Act of August 9, 1921, c. 57, 42 Stat. 147, 155; Act of June 7, 1924, c. 320, 43 Stat. 607; Act of June 2, 1926, c. 449, 44 Stat. 686; Act of May 29, 1928, c. 875, 45 Stat. 964; Act of July 3, 1930, c. 849, 46 Stat. 991, 1001.

[2] 45 Stat. 964.

[3] H. Report No. 1274, 70th Congress.

[4] 46 Stat. 991, 1002, 38 U.S.C.A. § 512b.

[5] H. Report No. 874, 71st Congress.

to be no longer totally disabled, "the waiver of premiums and payment of benefits shall cease and the United States Government life (converted) insurance policy, *including* the total disability provision authorized by this section, may be continued * * *"; and later, "the provision authorized by this section shall not be *included* * * * except upon * * * proof of good health satisfactory to the director [Administrator] * * *" and, "In all other respects such monthly premium shall be payable under the *same terms* and *conditions* as the regular monthly premium on the United States Government life (converted) insurance policy." [Italics supplied].

Thereupon the Administrator issued an additional policy to the veteran which contained, among others, the following heading and provisions:

"Provision for waiver of premium and payment of monthly income attached to and made part of the United States Government life (converted) insurance policy, No. K * * *" [Heading]

" * * * if the premium be not paid as stipulated, then this provision shall cease and terminate, but may be reinstated upon evidence of good health satisfactory to the Administrator of Veterans' Affairs";

And, " * * * this provision is issued under authority of sec. 311 of the World War Veterans' Act of 1924, as amended July 3, 1930 and is subject to the provisions of the World War Veterans' Act, 1924, as amended, and amendments and supplements thereto, and to the regulations of the Veterans' Administration now in force or hereafter published. The terms and conditions of the policy which are not contrary to or inconsistent with the terms and conditions of this provision are hereby expressly made a part of this provision."

It is necessary for us to ascertain the relation of the new total disability provision (sometimes referred to as provision) and the converted policy itself. This relationship is most important as it goes to the right and power of the Administrator to establish a different regulation controlling the reinstatement of the provision when lapsed, which regulation, of course, is the support of the language in the additional policy requiring the veteran to show "good health satisfactory to the Ad-

ministrator" to permit reinstatement of the provision.

 The statute directs the Administrator to include in the converted insurance policies the total disability provision. We can find no support for the expression that the "terms and conditions of the [converted] policy which are not contrary to or inconsistent with the terms and conditions of this provision are hereby expressly made a part of this provision." It has no statutory foundation, but rather, flies in the face of the statute. It seems very evident to us that the Act clearly directs the Administrator to *include* the total disability provision in the converted policy, rather than make the converted policy a part of the provision. In Montello Salt Co. v. Utah, 221 U.S. 452, 465, 31 S.Ct. 706, 708, 55 L.Ed. 810, Ann.Cas.1912D, 633, the Supreme Court has adopted the following definition of the Century Dictionary of "include": (1) "to confine within something; hold as in an inclosure; inclose; contain." (2) "To comprise as a part, or as something incident or pertinent; comprehend; take in; as the greater includes the less; * * * the Roman Empire included many nations." Brainard v. Darling, 132 Mass. 218; Henry's Executor v. Henry's Executor, 81 Ky. 342; Neher v. McCook County, 11 S.Dak. 422, 78 N.W. 998; Hibberd v. Slack, C.C., 84 F. 571, 577. Funk & Wagnalls' New Standard Dictionary defines it as follows: "1. to comprise, comprehend, or embrace as a component part, item or member; as, this volume *includes* all his works; the bill *includes* his last purchase. 2. To enclose within; contain; confine; as, an oyster-shell sometimes *includes* a pearl." So defined, there can be no doubt that the language of this section authorized and directed the Administrator to write an additional total disability provision which was confined, contained, inclosed, comprehended, and embraced as a component part, in the converted policy of insurance, and that this provision supplements the existing permanent and total disability features of the converted policy. The language of this section clearly makes this total disability provision a part of the converted policy. So then, as there is no authorization for issuance except as an inclusion, we hold that these provisions are a subordinate, additional, and integral part of the converted policy that was issued to the veteran.

The statutory authority for reinstatement of lapsed policies is found in sec. 304, 38 U.S.C.A. § 515. In part, it reads:

"§ 515. [Sec. 304]. * * * an application for reinstatement, in whole or in part, of lapsed * * * United States Government life insurance (converted insurance) hereafter made [after June 7, 1924], may be approved if made within one year after [July 2, 1926], the passage of this amendatory Act or within two years after the date of lapse or cancellation: *Provided,* That the applicant's disability is the result of an injury or disease, * * * suffered or contracted in the active military * * * service during the World War: *Provided further,* That the applicant during his lifetime submits proof satisfactory to the [Administrator] director showing that he is not totally and permanently disabled. * * *"

The following regulations were promulgated by the Administrator, under authority of sec. 5 of the Act, 38 U.S.C.A. § 426, which authorizes him "to make rules and regulations, not inconsistent with the provisions of this chapter which are necessary or appropriate to carry out its purposes,":

"Provision for reinstatement.

"3078. * * * United States Government life insurance which has lapsed, or may hereafter lapse, may be reinstated upon evidence of the insurability of the applicant satisfactory to the Director of the United States Veterans' Bureau and under the conditions stated in Regulations, paragraphs 3079, 3080. * * *"

"Health Requirements.

"3079. United States Government life insurance may be reinstated:

"(a) Within three calendar months including the calendar month for which the unpaid premium was due, provided the applicant is in as good health as he was at the due date of the premium in default.

"(b) After the expiration of the three calendar months mentioned in clause (a) provided the applicant is in good health."

"Application and medical evidence.

"3080. The applicant for reinstatement of United States Government life insurance must furnish during his lifetime, and before becoming totally and permanently disabled, a written application signed by him which shall state that he is in as good health as at date of lapse, or that he is in good health, in accordance with the requirements of the particular case; and in addition the applicant shall furnish such evidence relative to his physical condition as may be required by the director on such forms as the director may prescribe. * *"

Regulation 3079 was included in Regulation 15, and its exact language, or similar language is contained in all reinstatement regulations back to "war-days".

In Sec. 311 of the 1928 Act, 45 Stat. 971, this language is found: "Monthly premium must be paid by the insured under the same terms and conditions as the regular monthly premium on his insurance contract." The Administrator promulgated Regulation 3160(k) to aid in the administration of this new section. In part, it reads: "This provision may be reinstated after lapse, together with the policy, by compliance with the same terms and conditions provided for reinstatement of the policy of insurance to which this agreement is attached * * *". Thus it is clear that the Administrator determined that the total disability provision in the 1928 Act was a provision that could be "reinstated after lapse * * * by compliance with the same terms and conditions provided for the reinstatement of the policy of insurance to which this agreement is attached." It could only refer to sec. 304 and Regulation 3079 in respect of "the same terms and conditions" under which the converted policy might be reinstated. This was the Administrator's own interpretation of the original section granting total disability benefits. It was the prescribed procedure of the Administrator— in effect the law—when Congress passed the amendatory sec. 311 in 1930.

It will be recalled that in sec. 311 of the 1930 Act, 38 U.S.C.A. § 512b, the same character of insurance, total disability, is involved; the health standard for the issuance of the provision is the same; that the provision is to be "included" in the converted policy; and, that "in all other respects such monthly premium shall be payable under the same terms and conditions as the regular monthly premium on the United States Government life (converted) insurance policy."

The last clause, supra, is for all intents and purposes the same language in sec. 311 as originally enacted. We construe this language to mean that the provision should be reinstated, after lapse, upon compliance with the same terms and conditions provided for the reinstatement of

the converted policy of insurance in which this provision was, by statute, included; namely, sec. 304 of the Act and Regulation 3079(a)—the established course in the Veterans' Administration, well known to both the veteran policyholders and their representatives in Congress, and the same method adopted by the Veterans' Administration itself under the 1928 Act. This interpretation of the language in the 1928 Act by the Veterans' Administration was reduced to regulation and it unquestionably conformed with the historic method of reinstatement. But if there is any doubt remaining as to whether the provision is to be reinstated under the same rules, and as part of the converted policy, we think it must fall under the rule that Congress in passing or reenacting a statute acts with knowledge of the administrative interpretation of the original statute and adopts such construction when it does not substantially change the pertinent language in the subsequent statute.[6]

■ It is the position of the Administrator that as sec. 311 empowers him to include the total disability provision in the converted policy upon "proof of good health satisfactory to the director [Administrator]",· upon lapse of the policy,. it is his duty to determine, before reinstatement, if the applicant is in good health; and that this statutory duty, involving discretion, is not subject to review in the courts. If it were his duty to determine, before reinstatement, that the applicant was in good health there would be much force to such contention, and there would be support for his promulgation of Regulation 3164, upon the passage of sec. 311, as amended in 1930, which reads, in part, as follows: "If a premium be not paid as stipulated then this provision shall cease and terminate, but may be reinstated upon evidence of good health satisfactory to the Administrator of Veterans' Affairs, * * *" But such is not the case. The statutory language in sec.· 5 of the World War Veterans' Act does not authorize such regulation under this statute. It is explicit in its authorization that he (the Administrator) may promulgate "rules and regulations, not inconsistent with the provisions of this chapter, which are necessary or appropriate to carry out its purposes". We feel that the above regulation is inconsistent with the provisions of sec. 311 of the 1930 Act, and that it is not necessary or appropriate to carry out its purposes; and being directly in the face of sec. 304, there is no authority for this regulation, and it must stand as if never promulgated. This regulation falling, of course, the language in the policy, based upon such regulation, falls likewise.

■ The fact that it is necessary that the veteran must satisfy the Administrator in respect of his good health at the time of the issuance of the provision is not a justification, under the statute, for a regulation requiring proof of good health satisfactory to the Administrator to reinstate the lapsed provision. That has never been the criterion. There is a wide difference between the right of an insured to "reinstatement" of a policy of insurance, and the right for reinsurance. In Stamey v. United States, D.C., 42 F.2d 879, 881, the court said: "Reinstatement implies placing the insured in the same condition that he sustained toward the insurer before forfeiture was incurred, and does not imply the making of a new contract or policy." [cases] and further: "Clearly reinstatement does not change the contractual relation or status of the parties."

In Lovick v. Provident Life Ass'n, 110 N.C. 93, 14 S.E. 506, 507, it is said: " 'Reinstatement' does not imply reinsurance,—the granting or making of a new policy,—a new contract of insurance. It fairly implies placing the insured—in respect and relation to the company, the policy, the whole contract of insurance—in the same condition that he occupied and sustained towards them next before the forfeiture was incurred. The provision is not that the insured may reinsure. He might do this without such provision: The purpose was to give him a valuable benefit,—the benefit of such reinstatement,—

[6] Helvering v. Reynolds Tobacco Co., 59 S.Ct. 423, 83 L.Ed. ——, Decided ·January 30, 1939; Murphy Oil Co. v. Burnet, 287 U.S. 299, 302, 53 S.Ct. 161, 77 L.Ed. 318; United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 75 L.Ed. 1183; Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; National Lead Co. v. U. S., 252 U.S. 140, 145, 40 S.Ct. 237, 64 L.Ed. 496; Commissioner of Int. Rev. v. Great Western P. Co., 2 Cir., 79 F.2d 94; Board of Com'rs v. Bernardin, 10 Cir., 74 F.2d 809; Pfaff v. Bender, D.C., 38 F.2d 642, affirmed 5 Cir., 38 F.2d 649.

and secure it to him, by and as part of the contract of insurance. The purpose was to save him from loss as to premiums and assessments paid, and from any disadvantages he might be at in seeking reinsurance, or other insurance in some other company. Otherwise, why so provide for such reinstatement? * * * It [reinstatement] implies a revival and continuance of the contract of insurance forfeited, just as if there had been no such forfeiture. This is the very purpose contemplated and intended by the contract; otherwise, it means and is worth nothing, practically." International Ass'n of Machinists v. Grant, 21 Ala.App. 84, 105 So. 438, Mutual Life Ins. Co. of New York v. Lovejoy, 203 Ala. 432, 83 So. 591.

That the Congress of the United States intended the insured veteran to have the right of reinstatement of total disability benefits admits of no doubt. The legislative history of the World War Veterans' Act shows a proper solicitude on the part of our government in encouraging World War veterans to convert the annual renewable policies, and to take up anew the insurance policies which had lapsed for non-payment of premiums. The several Acts of Congress authorizing the conversion of war risk insurance without medical

examination clearly indicate liberality relative to the conversion of war risk insurance. The war risk insurance did not terminate, in general, until July 2, 1927. Liberal provisions were made for conversion into other forms of insurance in several statutes. We have been cited to no statute or valid regulation in which the right of reinstatement within three months from due date of premium in default had any appearance of reinsurance.

In the construction of sec. 310 of the Act, 38 U.S.C.A. § 512a, we see the Administrator construing "reinstatement" as we have construed it. This section made the provision of United States Government life (converted) insurance available to all persons who had theretofore been eligible to apply for yearly renewable term insurance or United States Government life (converted) insurance provided that "such person is in good health and furnishes evidence satisfactory to the [administrator] director to this effect." The health standard for issuance is the same as that contained in sec. 311. This section contains no provision for reinstatement, in consequence of which it must rely upon sec. 304 and regulations not inconsistent therewith. The record contains a copy of an opinion[7] from the Solicitor of the Vet-

---

[7] Veterans Administration
Date Feb. 6, 1933

From the Solicitor
To The Administrator
Subject Reinstatement of Insurance
Under Regulation 15.

You have referred for my comment and recommendation a memorandum to you from the Assistant Administrator, Mr. Breining, under date of January 18, 1933, reading as follows:

"On February 9, 1932, a memorandum was approved by you in which it was recommended that applications for insurance in which the applicants had lost a leg, an arm, the sight of one eye or was totally deaf in one ear, should be rejected as not being in good health. This recommendation was intended only for applications for new insurance under Section 310 and was not meant to apply to applications for reinstatement under Regulation 15.

"It is recommended that those applicants who have lost a leg, an arm, the sight of one eye or totally deaf in one ear, who were accepted under Section 310 in accordance with the former procedure, be reinstated under Regulation 15 in the event of a lapse, provided they are otherwise in good health."

It may be noted that this memorandum has been attached to the converted insurance file K-625,715. The memorandum of the Solicitor, (3 Sol. 232), of February 9, 1932, to which Mr. Breining refers and which was approved by you, was based on the proposition that Section 310, World War Veterans' Act, 1924, as amended, requires as a prerequisite to its benefits that the insured must be in good health and must submit evidence satisfactory to the Director (Administrator) to that effect. Whether or not a given applicant is in good health is a question of fact and whether the evidence submitted to establish such a fact is sufficient is primarily for the determination of the insurance and medical experts. You were advised, however, that from a legal standpoint there was no objection to the proposed recommendation which was consistent with the requirements of the law and which was, in effect, that applicants for insurance under Section 310 who may have lost a leg, an arm, the sight of one eye, or who may be totally deaf in one ear, should be rejected as not being in good health.

This recommendation, as Mr. Breining now points out, clearly dealt with appli-

erans' Administration to the Administrator (which he approved) upon the subject of reinstatement of lapsed policies issued under sec. 310. It would appear that veterans who had lost the sight of one eye under the "former procedure" were held to have satisfied the good health standard in the issuance of United States Government life (converted) insurance policies which we have seen contained total and permanent disability benefits.

Apparently a new procedure was adopted in which such a person was held not to satisfy such health standard. However, the ruling of the Solicitor, approved by the Administrator, very definitely limits the new health standard to those applying for the issuance of the policy after the adoption of the new health standard, expressly excluding its application to reinstatement of lapsed policies theretofore issued to the veteran who had suffered the loss of the sight of one eye, etc. Definitely, it occurs to us, did the Administrator, in this instance, recognize the distinction between reinstatement and reinsurance; and that the right to reinstatement of the converted policy (including total and permanent disability benefits), should not be denied for the loss of the sight of one eye when such loss existed prior to the issuance of the converted policy. In other words, the Administrator refused to apply a change in the standard of good health for the issuance of a new policy to the reinstatement of a policy theretofore issued under a different health standard.

■ We are of the opinion that the total disability provision should be reinstated. In reaching this conclusion, we do not interfere with the discretion which is lodged in the Administrator in respect of the evidence of health necessary to satisfy him in the issuance of the original provision, or in the health condition under the statute and valid regulations for the purpose of reinstatement. Rather, we base our conclusion upon the exercised discretion in this case and his own findings expressly admitted.

■ We have held the provision to be included in the converted policy. As it came under the general requirements for reinstatement of United States Government life (converted) insurance policies contained in sec. 304, and as reinstatement was requested within three months from the due date of the premium in default, under Regulation 3079(a), supra, it was merely necessary for the veteran to show that he was in as good health as he was at the due date of the premium in default. In Meadows v. United States, 281 U.S. 271, 50 S.Ct. 279, 280, 74 L.Ed. 852, 73 A.L.R. 310, the Supreme Court has said:

"The right to reinstatement, when it exists flows from the statutory provision and not from any undertaking expressed in the contract of insurance. No doubt, the policyholder may have the benefit of the statute, although passed subsequently to the issue of the policy, White v. United States, 270 U.S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530, but a reinstatement under the provisions of the statute would be not the fulfillment of a contractual obligation, but, in effect, the making of a new contract by statutory sanction."

\*　　\*　　\*　　\*　　\*　　\*

"The original policy had come to an end; liability under it had wholly ceased; a new application was required, together with proof of an existing condition sufficient to satisfy the director, before rein-

cations for insurance under Section 310 and was not intended to affect the general standards for reinstatement under Regulation 15 (V.V.). Furthermore, as the recommendation involved a somewhat stricter requirement than had been laid down for applications under Section 310 in the past, it is obvious that it would not have any retroactive effect so as to disturb or invalidate applications for insurance under Section 310 already granted prior to the approval of the memorandum of February 9, 1932.

In response to your request for a recommendation, I would state that I concur with Mr. Breining's recommendation that where an application for insurance under Section 310 had previously been granted in accordance with the then existing procedure and where the insured at the time such insurance was granted had lost a leg, an arm, the sight of one eye, or was totally deaf in one ear, such insured should be permitted, upon the lapse of said insurance previously granted, to be reinstated under Regulation 15, provided the applicant otherwise is in good health. In short, I agree with Mr. Breining's interpretation of the approved memorandum of February 9, 1932, to the general effect that said memorandum was not intended to be applied retroactively.

J. O'C. Roberts

Approved by Administrator 2/7/33

File Att.　　　　　　　　　　　F.T.H.

GPH/JWBy/ajm　　　　　　　　W.

statement could be made. The effect of the statute is to accord the privilege of reinstatement to the holder of a lapsed policy, not to read into it a promise to that end. The existence of the old policy is, of course, a necessary prerequisite to the consideration of a claim for the allowance of the statutory privilege, but the claim is one under the statute, not under the contract, * * *."

We are of the opinion that the appellant met in full the requirements outlined in the Meadows Case, supra. A new application for reinstatement was filed and he submitted proof of an existing condition which, under the statute and pertinent regulations, was sufficient in law to satisfy the Administrator. United States v. Hendrickson, 10 Cir., 53 F.2d 797. We recognize that the Administrator was not satisfied that the soldier met the health requirements under the new regulation, but this regulation having been held to be void, we point to the facts in the record showing that the Administrator actually found the existing health condition sufficient for reinstatement. The Administrator found as a fact that the insured at the time he made the application for reinstatement was in as good health as he was at the due date of the premium in default. The Administrator by his demurrer admits this definite allegation in the bill filed below. In his answer, the Administrator affirmatively states it to be the fact. Further, by reinstating the converted insurance policy, the Administrator not only found such health condition to exist, but affirmatively acted upon it. Thus the Administrator, having fully exercised his discretion in this respect, and having found that the veteran met the standard required by law, there remains no further discretion to be exercised. There only remains a purely ministerial duty of the Administrator which may be compelled to be performed by mandamus.[8]

However, the Administrator in his answer avers that "The granting to petitioner total disability insurance on June 1, 1931 was in error, as the petitioner was not then in good health and did not submit evidence of good health satisfactory to respondent, as Administrator of Veter-

ans' Affairs" and in his brief submits that "The controversial question in the instant litigation is whether the appellant was, or was not, a good insurance risk within the total disability provision of said Section 311."

We believe that the position of the Administrator is untenable. The question involved is not whether the insured was a "good insurance risk" for the total disability provision. The Administrator answered this question affirmatively when he issued the provision. The appropriate standard is that for reinstatement, not insurance or reinsurance. Nor do we consider that the Administrator may claim error in the exercise of his discretion on June 1, 1931 in finding that the insured complied with the health standards under the statute and his own regulations. There is no fraud asserted and we cannot see that there is basis for the error claimed. The insured lost the sight of an eye in the active military service of his country. He had been granted service-connected disability benefits for its loss in the form of compensation by the Administration and its predecessor. The sight of the eye was gone when he converted his War Risk yearly renewable term insurance into the 5 year convertible term insurance, which carried total and permanent disability benefits; it was gone when he converted the five year convertible term insurance into the twenty-payment life policy, which carried total and permanent disability benefits; and, it was gone when he was examined by the chief medical officer for the total disability provision, and the loss was at that time noted by such officer.

That the Administrator may have changed his idea as to what constituted good health subsequent to the issuance of the provision cannot be asserted here in support of his contention that he committed error in the determination of the good health of the veteran at the time of the issuance of the provision. In our opinion, the Administrator did not err in finding that the veteran met the standard of health required under the statute for the issuance of the provision. The Administrator may not "assert that the risk did not exist, or defeat recovery * * *

---

[8] Wilbur v. U. S. ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445; Lane v. Hoglund, 244 U.S. 174, 181, 37 S.Ct. 558, 61 L.Ed. 1066; Garfield v. U. S. ex rel. Goldsby, 211 U.S. 249, 262, 29 S.Ct. 62, 53 L.Ed. 168; Roberts v. United States, 176 U.S. 221, 231, 20 S.Ct. 376, 44 L.Ed. 443; Kendall v. United States ex rel. Stokes, 12 Pet. 524, 9 L.Ed. 1181.

on the ground of an already existent disability without pleading and proof of fraud in securing the" issuance of the new provision. United States v. Chandler, 5 Cir., 77 F.2d 452. By issuing and including the total disability provision authorized by sec. 311, the Administrator made an affirmative finding of "good health satisfactory to the director". By the issuance of this provision the rights of the veteran thereby became vested. "War risk policies, being contracts, are property and create vested rights. The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder." Lynch v. U. S., 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434.

From this view of the case it is apparent that nothing remains to be done under the statute but the reinstatement of the total disability provisions of the policy. The veteran has done everything necessary to have this provision reinstated. That which is remaining is a purely ministerial duty of the Administrator, which may be compelled to be performed by mandamus. The words of the statute are clear and permit of no construction. Therefore, there remains nothing but a clear-cut, well-defined and positive duty on the part of the Administrator to reinstate the policy, together with the total disability provision as contained therein.[9]

The order of the district court is reversed and the cause remanded for further proceedings consistent herewith.