## CARTER v. PROVIDENT INS. CO.

### No. 7726.

United States Court of Appeals for the District of Columbia.

Argued June 5, 1941.

Decided Oct. 14, 1941.

Charles H. Houston, of Washington, D. C., for plaintiff in error.

James M. Earnest, of Washington, D. C., for defendant in error.

Before MILLER, VINSON, and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is an action on an industrial life insurance policy for $250, issued August 9,

1937 on the life of Randolph Dixon. The Municipal Court gave judgment for the defendant, and we allowed an appeal.

The beneficiaries originally named in the policy were Dixon's children. Premiums were payable weekly. Dixon paid all premiums until he entered a hospital on January 28, 1938. He then turned the policy over to plaintiff, Catherine Carter, a friend in whose house he lived. He told her that he could no longer pay the premiums, and that if she wished to do so he would make her the beneficiary. She told the company's collector that Dixon was in the hospital, and got an application form for change of beneficiary. Dixon filled out the form, naming as beneficiary "Catherine Carter, relationship, common-law wife." Plaintiff delivered this form, and the policy, to the collector, who afterwards returned the policy to her with an endorsement making her the beneficiary. At the time of trial the endorsement read: "Beneficiary Changed to Catherine Carter, ~~Wife,~~ Friend 28, Feb. 25, 1938." There was conflicting testimony as to whether the description of plaintiff was changed from "wife" to "friend" before or after the endorsement was delivered to her. There was negative but no affirmative testimony as to who made the change. Since it does not affect the result we may assume, without deciding, that the change was made after delivery and by the plaintiff.

Plaintiff paid the premiums regularly from January to July, 1938. In July and August she fell five weeks in arrears. In August, the company's collector accepted from her the overdue premiums and noted in the receipt book "accepted for revival as per contract." He continued to collect premiums from plaintiff until the death of the insured. In November plaintiff told an inspector of the company, as well as its collector, that the insured was in a hospital. It is not disputed that the company continued to accept the premiums from the collector. The insured remained in the hospital until January 10, 1939, when he died of tuberculosis and syphilis.

The policy included the following provisions: "Payment of Premiums. * * * Except as provided in this Policy, any default in payment of premium shall immediately render this Policy null and void. * * *

"No representative is authorized to receive, credit or receipt for premiums on policies more than four weeks in arrears, and the payment of any such arrears, given to a representative shall be at the sole risk of those who pay them, and shall not be credited upon the Policy whether entered in the receipt book or not. * * *

"Reinstatement. Should this Policy lapse for non-payment of premium, it may be reinstated, if not more than fifty-two premiums are due, by the payment of all arrears and the presentation of evidence of insurability of the Insured satisfactory to the Company and approved at its Home Office. * * *

"When Policy Voidable. No Obligation is assumed by the Company prior to the date hereof, nor if within two years preceding such date the Insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease. * * *

"General Conditions. * * *

"The Policy shall be void if any erasure or alteration be made thereon not authorized by the Company, or if any premium shall not be paid in accordance with the terms hereof. * * *"

The company concedes that it waived any right to evidence of insurability and that the policy was "effectively revived and reinstated" on August 13, 1938.[1] Nevertheless, it contends that the policy is unenforceable.

The company relies, first, on the change in the endorsement from "wife" to "friend." The description "common-law wife", in the application, was erroneous; but an erroneous statement which does not relate to a material matter, and is not made with intent to deceive, does not avoid a life insurance policy.[2] The error did not relate to a material matter, since a beneficiary, in a policy taken out by the insured,[3] need not have an insurable interest. There is no evidence that the in-

---

[1] Cf. Eureka Life Ins. Co. v. Hawkins, 39 App.D.C. 329.

[2] Cf. D.C.Code, Supp. V, Tit. 5, § 217 m, 48 Stat. 1133, § 15; Kaplan v. Manhattan Life Ins. Co. of New York, 71 App. D.C. 250, 109 F.2d 463.

[3] It does not expressly appear who applied for the policy, but, in the absence of evidence to the contrary, it is to be presumed that the insured did so. He paid the original premiums. He also applied for the change of beneficiary.

sured used the term common-law wife with intent to deceive. He may have believed that plaintiff was his common-law wife. Accordingly, the company does not rely on the misdescription in the application. Yet it does rely on the correction of "wife" to "friend" in the endorsement on the policy. But this correction was equally innocent and equally immaterial. It was as innocent as a correction in spelling or capitalization would have been. Though the policy provides that it is to be void "if any erasure or alteration be made thereon not authorized by the Company", it is not to be construed so rigidly as to turn this innocent and immaterial correction into a defense.[4]

■ The company contends that a "reinstated" policy is to be treated as if it were a new policy, and that the condition against past hospitalization therefore took effect anew as of the time when the policy was reinstated. It cites some cases from other jurisdictions which tend to support that view. But in the recent case of United States ex rel. Lyons v. Hines this court said: " 'Reinstatement implies placing the insured in the same condition that he sustained toward the insurer before forfeiture was incurred, and does not imply the making of a new contract or policy.' "[5] We adhere to that view. Older dicta about a "new contract",[6] on which the company relies, are not persuasive in view of the Lyons case. The condition against hospitalization was satisfied, once for all, when the policy was issued. It did not take effect again when the policy was reinstated. If the question were doubtful, it would be governed by the rule that doubtful language in a policy is to be construed against the insurer. It is unnecessary to consider whether the company would not in any event be estopped, by its action in reinstating the policy when its representative knew that the insured had lately been in a hospital, and collecting premiums when its representatives knew that the insured was in a hospital, from relying on those known facts as a defense.

■ Our view of the nature of reinstatement disposes, also, of the company's contention that the plaintiff's lack of insurable interest invalidates the reinstated policy. The policy sued on is the one which the insured took out in 1937 and in which, by the change of 1938, he made the plaintiff beneficiary. She acquired full rights under it, including the right of reinstatement. Her rights as beneficiary are not affected by her lack of insurable interest.[7] Cases like Carter v. Continental Life Ins. Co., Inc.,[8] in which the policy was taken out by the beneficiary, are not in point.

Reversed.

---

[4] "Erasure" involves obliteration. In re Fergeson, 126 Misc. 286, 213 N.Y.S. 656. "Alteration" involves material change, i. e., change in legal effect. Reilly v. First National Bank of Springfield, 148 Ill. 349, 35 N.E. 1120; Strehlow v. Reingruber, 198 Wis. 525, 224 N.W. 742; Johnston v. DePuy, 188 A. 742, 15 N.J. Misc. 94; Chamberlain v. Wright, Tex. Civ.App., 35 S.W. 707.

Cf. Imperial Fire Insurance Co. v. Coos County. There a fire insurance policy provided that it should be "void * * * if mechanics are employed in building, altering, or repairing premises".

The Court held that "material alteration and repair of the building beyond what was incidental to the ordinary repairing necessary for its preservation * * * would be a violation of the condition of the policy * * *." (Italics supplied) 151 U.S. 452, 453, 463, 14 S.Ct. 379, 382, 38 L.Ed. 231.

[5] 70 App.D.C. 36, 41, 103 F.2d 737, 742, 122 A.L.R. 674.

[6] Metropolitan Life Ins. Co. v. Burch, 39 App.D.C. 397, 405.

[7] Arnott v. Prudential Ins. Co. of America, 63 Hun 628, 17 N.Y.S. 710.

[8] 73 App.D.C. 60, 115 F.2d 947.