### CAPITAL CITY LIFE INS. CO., Inc. v. SAUNDERS.

### No. 773.

Municipal Court of Appeals
for the District of Columbia.

April 13, 1949.

William E. McCollam, of Washington, D. C. (George J. Boden, of Washington, D. C., on the brief), for appellant.

Reginald B. Jackson, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Capital City Life Insurance Company brings this appeal from a judgment in favor of appellee Elizabeth Saunders (plaintiff below) entered on a policy of insurance on the life of her cousin, Philip R. Twyman.

The agreed statement of proceedings and evidence reveals that plaintiff was beneficiary of the policy, which was of the industrial type, and which had lapsed for nonpayment of premiums amounting to $7.75.[1] An agent of defendant called at the home of plaintiff to see about reinstatement of several policies held by plaintiff, including this one. She paid him the arrears of premiums, her cousin having left the money with her for that purpose. Plaintiff testified that she told the agent that Twyman was then downstairs in the same house, but that the agent did not ask for him or go to see him. In exchange for the premium payments the agent gave her a conditional receipt, which he said was "O. K." and that he would "put it in the book when the other policies were reinstated."

The receipt recited that the payment was received subject to several conditions. These included: that the policy was then "lapsed, void and not in force; that the insured, and his or her beneficiary and assigns [this in bold type]: HEREBY SPECIALLY WARRANT THE PRESENT GOOD HEALTH OF THE INSURED." Other conditions in smaller print were that the receipt was only an application for reinstatement; that no liability would follow until the company formally accepted the payment, endorsed its consent to the reinstatement by transfer of the payment to the premium receipt book and evidenced therein by the signature of a company official; that consent was conditioned upon a suspension of all benefits for one month after reinstatement as indicated in the premium receipt book; that the endorsement would be void if the health of the insured were not as warranted above. The receipt book was never endorsed as required and a company official testified that the company never approved the reinstatement.

It was also disclosed that the agent had no authority to reinstate the policies and that he had returned to the premises to collect on the other policies and to see the insured but that plaintiff was not at home. The reason for his failure to see the in-

[1] Since the weekly premium was 31 cents, this would seem to indicate that the policy had become 25 weeks in arrears.

sured was because three days after plaintiff had tendered the lapsed premiums and applied for reinstatement of the policy the insured entered Glenn Dale Sanatorium suffering from an advanced case of pulmonary tuberculosis, of which he died in 23 days. Thereafter plaintiff, who had not seen the agent since February 9, applied to the company for payment, was refused beyond a refund of the premiums paid, and subsequently brought this action. The trial court, stating no reasons therefor, entered a general finding and judgment for plaintiff for the face value of the policy.

Defendant contends that the trial judge by his general finding must have held that the policy had been reinstated in fact, despite the uncontroverted evidence that the policy had lapsed and that the warranty of good health was absolutely false. Plaintiff contends on the other hand that the policy was reinstated by retention of the premiums and that such retention, without requiring evidence of the good health of the insured, constituted a waiver of the warranty. We think for reasons stated below that the evidence would not support a finding that the policy had in fact been reinstated.

In this jurisdiction a liberal view prevails in favor of holders of industrial life policies. But it is equally well established that the rule of liberal construction has no application where the contract is clear and definite.[2]

Here we are dealing with a policy which had lapsed for non-payment of premiums. In an attempt to revive it the beneficiary tendered the premiums in arrears. The receipt given by the company's agent was far from unconditional.[3] It stated in the clearest language the various conditions under which it was issued, and in bold, arresting print that both the insured and the beneficiary "specially warrant the present good health of the insured." The company never entered the payment in the premium receipt book,[4] and made no later demand for payment of premiums accruing.[5]

We hold that on the record there should have been a finding that the warranty of good health was false. We hold also there was no sufficient evidence to support a finding that the company had waived the warranty, or that the policy had been reinstated.

Reversed.

---

[2] Peoples Life Ins. Co. v. Goffs, D.C. Mun.App., 34 A.2d 468, and cases cited.

[3] See National Benefit Association v. Elzie, 35 App.D.C. 294.

[4] See Carter v. Provident Ins. Co., 74 App.D.C. 348, 122 F.2d 960; Provident Life Ins. Co. v. Grant, D.C.Mun.App., 31 A.2d 885.

[5] See Eureka Life Ins. Co. v. Hawkins, 39 App.D.C. 329.