KAPLAN et al. v. MANHATTAN LIFE
INS. CO. OF NEW YORK.

No. 7285.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 29, 1939.

Nathan M. Lubar, of Washington, D. C.,
for plaintiffs in error.

464

Benjamin S. Minor, Arthur P. Drury, and John M. Lynham, all of Washington, D. C., for defendant in error.

Before EDGERTON, VINSON, and RUTLEDGE, JJ.

EDGERTON, Associate Justice.

This is an action on a life insurance policy. Defendant had judgment in the Municipal Court, and the case is here on writ of error.

The insured applied for the policy on August 11, 1933, and it was issued November 19, 1933. He died, of cancer of the stomach, on September 6, 1934. In his application he said that he had not consulted or been treated by a physician within five years. Actually he had twice consulted physicians for pain in the abdomen, which was diagnosed in each case as acute indigestion; once on December 10, 1930, and once on March 23, 1932. Dr Rolls, who treated him the second time, observed that this diagnosis does "not necessarily imply anything of a serious nature but may be purely the result of over eating." Dr. Shapiro, the insured's family physician, treated him for an occasional acute cold, the last time about September, 1931.

There is no evidence to show, or reason to suppose, that the applicant, when he applied for insurance, had these details in mind. The fact that he overlooked them does not avoid the policy. "An applicant for insurance is not required, nor indeed. expected, to disclose the fact of consulting a physician for slight or temporary ailments such as an ordinary cold, inability to sleep, constipation, headache, or the like. * * * To void this policy on the ground of false representation, the answer must not only have been untrue, but it must have been with reference to a material matter * * *." [1] There is nothing to show that these sporadic ailments were material. They can hardly have affected the risk or the company's willingness to contract.

The application stipulated that the policy should "not take effect until issued by the Company and accepted by the applicant and the full first premium thereon is paid while the health, habits and occupation of said applicant are the same as described in this application." Dr. Shapiro gave the insurance company a death certificate which stated that the first symptoms of cancer of the stomach appeared "about August 20, 1933. Saw him on 27th and stated he vomited small amount of blood twice in week before." If this recital is correct the policy issued on November 19, 1933, is void by its own terms. [2] The beneficiaries contend that the year "1933" in the death certificate is an error, and that the first symptoms of cancer actually appeared in August, 1934, nine months after the policy was issued. They undertook to prove this at the trial. After they had introduced a stipulation covering the making of the application, the issuance of the policy, the death of the insured, etc., they called Dr. Shapiro "out of order," with the consent of the court and as an accommodation to the witness. They asked him when the cancer was first diagnosed, and when the insured first raised blood. Their counsel explained that "he intended to show the first knowledge of cancer on the part of the insured to have been just prior to his admission to the hospital, or approximately

[1] Wharton v. Ætna Life Insurance Co., 8 Cir., 48 F.2d 37, 43, certiorari denied 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 529; Connecticut Mutual Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 257, 5 S. Ct. 119, 28 L.Ed. 708; Mays v. New Amsterdam Casualty Co., 40 App.D.C. 249, 258, 46 L.R.A.,N.S., 1108, certiorari denied 238 U.S. 624, 35 S.Ct. 662, 59 L.Ed. 1494; New York Life Insurance Co. v. Moats, 9 Cir., 207 F. 481, 490; New York Life Ins. Company v. Cumins, 3 Cir., 24 F.2d 1, 2; Bankers' Life Company v. Hollister, 9 Cir., 33 F.2d 72, 74. If an applicant makes statements of medical history which are material, and which he knows to be false, this avoids the policy without proof of a "conscious design to defraud." Mutual Life Insurance Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L. Ed. 1202; Kavakos v. Equitable Life Assurance Society of the United States, 66 App.D.C. 380, 88 F.2d 762. But that is not this case. In the Kavakos case the insured stated that he had consulted no physician within five years, when he had in fact consulted physicians dozens of times within two years.

[2] Parties may validly agree that insurance shall not attach unless the insured is in good health when the policy is issued. Stipcich v. Metropolitan Life Insurance Company, 277 U.S. 311, 321, 48 S.Ct. 512, 513, 72 L.Ed. 895; Mutual Trust Life Insurance Co. v. Ossen, 2 Cir., 77 F.2d 317, certiorari denied 296 U.S. 616, 56 S.Ct. 136, 80 L.Ed. 437.

two weeks prior to death, and that the first passing of blood was approximately the same time." The company's counsel objected to these questions on the ground that "they were not pertinent to any issue then before the court," and the court sustained the objection. This, we think, was error. The company had pleaded that the insured was suffering from cancer when he applied for insurance, and that he had raised blood before the policy was issued. If, as the company argues, the court's intention was to exclude the testimony temporarily and admit it later, this should have been made clear to counsel at the time. The record does not indicate that it was made clear.

■ The insured stated in the application that he had other life insurance totaling $1,500, and that he contemplated no application to any other company. Between the date of the application and the date of the policy he obtained other insurance, to an amount not disclosed by the record, without notifying the defendant company. It contends on this appeal that his failure to report this additional insurance, avoids the present policy.[3] The Supreme Court has said that "changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy" must be disclosed; "For, even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure."[4] Perhaps additional insurance may sometimes increase the "moral risk."[5] But an additional insurance policy, like an illness, may certainly be too small to affect the risk or the company's willingness to assume it. No company would refuse a policy for fear that a man already insured for $1,500 or $2,500 would kill himself for an additional $500 or $1,000. The non-disclosure of the other insurance in this case is no defense, at least so long as it is not shown to be of such amount as to affect the risk.

■ The policy provides that "If the age of the Insured has been misstated, the amount payable hereunder shall be such as the premium would have purchased at the correct age." In the application the insured stated his age as 55, and evidence in corroboration was introduced on the trial. The company produced evidence which tended to show that he was older. This included a hospital record, made a year later, which gave his age as 64. The admission of this record is assigned as error. Hospital records of diagnosis and treatment are usually held[6] to be covered by statutes which, like D.C.Code, Tit. 9, § 20, forbid physicians to disclose confidential information acquired while attending a patient in a professional capacity. But a properly authenticated record of the patient's name, address, age, etc., is admissible, provided there is no disclosure of diagnosis or treatment.

■ The company contends that the cause of action of the adult beneficiary,[7] Sarah Kaplan, was barred by the three-year statute of limitations. D.C.Code, Tit. 24, § 341. She replies that her suit was timely under the six-year statute of limitations of New York, where the policy was to be paid. According to the established rule, a limita-

■[3] Since the case is to be remanded, we consider this question although it was not raised below. Cf. Rule 5(3).

[4] Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 316, 317, 48 S. Ct. 512, 72 L.Ed. 895. There is considerable authority to the contrary. Day v. Hawkeye Insurance Co., 72 Iowa 597, 34 N.W. 435; Note, 76 A.L.R. 1295.

[5] Cf. Jeffries v. Economical Mut. Life Insurance Company, 22 Wall. 47, 22 L. Ed. 833; Phœnix Mut. Life Insurance Company v. Raddin, 120 U.S. 183, 189, 7 S.Ct. 500, 30 L.Ed. 644.

[6] Price v. Standard Life & Accident Insurance Co., 90 Minn. 264, 95 N.W. 1118; Rush v. Metropolitan Life Insurance Co., Mo.App., St. Louis Court of Appeals, 63 S.W.2d 453; Smart v. Kansas City, 208 Mo. 162, 105 S.W. 709, 14 L.R.A.,N.S., 565; Sparer v. Travelers Insurance Co., 185 App.Div. 861, 173 N. Y.S. 673. Cf. Allen v. American Life & Accident Insurance Co., Mo.App., St. Louis Court of Appeals, 83 S.W.2d 192; Green v. M. Nirenberg Sons, Inc., 166 Misc. 652, 3 N.Y.S.2d 81.

[7] The policy runs "To Sarah Kaplan, Harry Kaplan and Jackie Kaplan, his daughter and grandchildren, share and share alike or the survivors or survivor." The grandchildren are minors.

tion on the time of suit is procedural and is governed by the law of the forum.[8] On the present record, therefore, the interest of the adult beneficiary is barred by the District statute, and the company is liable to the minor beneficiaries only to the extent of their separate interests in the policy.

Reversed and remanded.

---

[8] Townsend v. Jemison, 9 How.,U.S., 407, 13 L.Ed. 194; McElmoyle v. Cohen, 13 Pet. 312, 10 L.Ed. 177; Wells v. Alropa Corporation, 65 App.D.C. 281, 82 F. 2d 887, 888; Note 6 L.R.A.,N.S., 658; Goodrich. Conflict of Laws, 168.