## CARDWELL v. UNITED STATES.

### No. 13264.

United States Court of Appeals
Fifth Circuit.

Jan. 17, 1951.

H. O. Williams, San Angelo, Tex., for appellant.

O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., Frank B. Potter, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and McCORD, and BORAH, Circuit Judges.

BORAH, Circuit Judge.

Plaintiff-appellant, Jessie Brunette Cardwell, as the sole beneficiary of a National Service Life Insurance policy issued to her deceased husband, Ross Cardwell, brought this action against the United States under the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 801 et seq., to recover the proceeds of the policy.

In its answer, the Government set up as an affirmative defense that as a result of fraudulent representations made in his application for reinstatement dated October 9, 1947, the insured had fraudulently procured the reinstatement of the policy which had lapsed for failure to pay the premium due on July 1, 1945.

The cause came on for trial before a jury and at the close of all the evidence the Government moved for a directed verdict in its favor. The trial court found that the evidence unmistakably showed that the applicant made a false representation as to his having consulted a doctor; that this was a material representation which the Government relied upon when it issued the policy and, therefore, it was in law a fraud which vitiated the contract. Accordingly, the trial court instructed the jury to return a verdict for the defendant and from the judgment which was entered upon the jury verdict, plaintiff appeals.

Insisting that the court erred in holding that the evidence was such as to establish all of the elements of the defense of fraud as a matter of law and that the court erred in instructing the jury to return a verdict for defendant, plaintiff urges in support thereof two principal points. First, that there were ample grounds for a jury to find that the representations in his application for reinstatement were not made fraudulently and with intent to deceive; and second, that misstatements contained in the application for reinstatement were immaterial.

The evidence, so far as it need be stated, shows that Ross Cardwell entered the military service of the United States on March 15, 1941. While in the army he obtained a $10,000 National Service Life Insurance Policy, which he allowed to lapse for nonpayment of the premium due on July 1, 1945. In the fall of 1947 the Veterans Administration conducted a publicity drive, including radio programs, urging veterans to reinstate their lapsed National Service Life Insurance and advising that such insurance could be reinstated upon payment of two months premiums if the veteran was in as good health as he was when the insurance lapsed. The insured heard these radio programs and asked the plaintiff to take his honorable discharge papers to the local Veterans Administration Office and secure a reinstatement of his policy. The plaintiff presented these papers to a typist in the Veterans Administration's office, who in turn asked whether the insured was in as good health as he was when he came out of the army and whether he was receiving a pension. Upon receiving an affirmative answer to the first question and a negative answer to the second, the typist then proceeded to fill out the application for reinstatement of the policy[1] and instructed the plaintiff to have her husband sign the application, enclose a check and mail it that

---

1. Plaintiff testified: "I gave her the papers, and she asked me a few questions, and she never turned around and asked me anything, all she did was just sit there and type. Q. What questions did she ask you? A. She asked me if he was in as good health as he was when

he came from the army, and he was, to our best opinion. Q. Do you remember any other questions she asked? A. She asked if we were receiving a pension, and which we were not, and we never had gotten one then."

day. When the insured returned home from work that evening he signed and mailed the application and enclosed his check as directed. The application was approved by the Veterans Administration and thereafter the reinstated policy was converted to thirty-year payment life.

The application, among others, contained two questions which it is claimed the applicant knowingly answered falsely. These questions and answers are as follows:

"8. Are you now in as good health as you were on the due date of the first premium in default?

"Answer: Yes.

"9. Have you been ill, or suffered or contracted any disease, injury, or infirmity, or been prevailed by reason thereof from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health since the lapse of this insurance?

"Answer: No."

From the evidence it appears that after the policy had lapsed in July 1945 for nonpayment of premium and before its reinstatement in October 1947, the insured consulted Dr. K. H. Beall on several occasions for pain in the abdomen, loss of weight and nervousness. Dr. Beall died in November 1946, but plaintiff, who was present when the doctor gave his diagnosis, testified that he ascribed the condition to nervousness and imagination and said that there was nothing physically wrong with the insured. It further appears that during this same period of time the insured also consulted with Dr. R. H. Smith for an injured hand and abdominal pains. Dr. Smith diagnosed the abdominal distress as a simulated appendix and did not administer any treatment. Throughout this entire period the insured worked continuously at his carpentry trade and in the opinion of others did not appear to be sick. In the fall of 1948 he became ill and consulted Dr. W. B. Lassiter, who was of the opinion that the insured was suffering from appendicitis. An appendectomy was performed and it was then discovered that the insured had a perforated cancer of the bowel, and extensive spread throughout the peritoneal cavity. Thereafter the insured submitted to the Veterans Administration two applications for pension, one claiming that his disability was service connected and the other claiming that disability was nonservice connected. In both of these applications the insured stated that he had been treated by Dr. Beall on October 22, 1945 for stomach trouble. The Veterans Administration awarded compensation on account of disability resulting from conditions incurred or aggravated during insured's war service, effective as of October 1, 1948, and the insured died on March 14, 1949. In respect to the representations made by the insured in his application for reinstatement, Dr. J. F. Rowe, an employee of the medical department of the Veterans Administration, testified that if the insured had stated in his application that he had been examined by physicians regarding his health he would not have approved the application without further investigation.

The representation made by the assured that he was in as good health on the date of application for reinstatement as he was on the due date of the first premium in default expressed an opinion of the insured. There is nothing in the evidence to suggest that this opinion was not honestly held. Therefore, the Government's case for a directed verdict rests upon the undenied fact that in his application the insured falsely stated that he had not consulted a physician for medical advice or treatment in regard to his health since the lapse of his insurance. And the question here is not whether the representation was false but whether or not the evidence clearly and convincingly established fraud.

In order to justify a directed verdict the evidence must be such that without weighing the credibility of witnesses there can be but one reasonable conclusion as to the verdict. And to void a policy for fraud there must be present in the evidence facts showing that the insured made a false representation, (1) in reference to a material fact, (2) with knowledge of its falsity, (3) with intent to deceive, and (4) with action taken in reli-

ance on the representation. Pence v. United States, 316 U.S. 332, 338, 62 S.Ct. 1080, 86 L.Ed. 1510; Edwards v. United States, 6 Cir., 140 F.2d 526. There can be no doubt as to the falsity of the representation contained in the application for reinstatement, and that action was taken by the Government in reliance thereon. But it is not every false statement that will void an insurance policy.[2] The representation must not only have been untrue, but it must have been in reference to a material matter and knowingly made with knowledge of its falsity and with intent to deceive. And when reasonable men may differ as to whether a representation was material or whether a false answer was made with intent to deceive, those questions must be submitted to the jury.[3] Judging the proof by these standards, we cannot say the evidence preponderates so heavily in favor of the Government as to leave no doubt about the facts or the inferences to be drawn therefrom.

In sustaining the Government's motion for an instructed verdict, the trial court relied on the case of Pence v. United States, supra, but the case at bar and the Pence case are clearly distinguishable on their facts. Pence had been a physician and medical officer in the military service of the United States. In 1920 his policy lapsed for nonpayment of premiums and in his application for reinstatement, submitted in July 1927, he categorically denied he had ever been treated for any disease of the throat, heart, or stomach. He also denied that he had consulted any physician since the lapse of the policy, or had been ill or prevented by ill health from following his occupation. However, in an application for compensation filed in 1928 Pence stated that in 1918 an Army doctor had told him that his heart was shot and he had severe gastric upset which, according to Pence's admission, was the forerunner of duodenal ulcer which perforated in 1920 and again in 1925. In 1925 he received a gastro-intestinal X-ray which resulted in a diagnosis of suspected duodenal pathology.

In his application for compensation Pence also gave a history of treatment by one physician for sinusitis and myocarditis and by four others for sinusitis alone, as well as treatment carried out by himself, which in one instance included confinement to bed for eight days. In its opinion the Supreme Court referred to Pence's representations in the application and to his contrary statements, which he as a doctor made with full knowledge of the subject and their import, and observed that his admissions left no room for conjecture as to the falsity of the previous statements in the application for reinstatement and of his knowledge of such falsity and on the basis of these facts held that the requisite intent to defraud would be presumed and therefore need not be proven "in the absence of countervailing evidence." In amplification of the views expressed the court further said, "No evidence in the case served in any way to contradict, qualify, or explain Pence's admissions. We are of opinion that in the absence of any such evidence his admissions established so overwhelming a case in favor of the Government as to require the direction of a verdict in its favor, * * *." [316 U.S. 332, 62 S.Ct. 1084.]

The evidence which the court said was absent in the Pence case and which, if present, would have required the submission of the question of fraud to the jury, is here present. In the case at bar the insured was a layman, a carpenter, who not only did not know that he had a serious disease but on the contrary had been advised by his physicians that his trouble was imaginary and that there was nothing physically wrong with him. There is no denial that the insured worked without interruption at his carpentry trade from August 1945 until the latter part of August 1948,

2. Wharton v. Aetna Life Ins. Co., 8 Cir., 48 F.2d 37, 43; Kaplan v. Manhattan Life Ins. Co., 71 App.D.C. 250, 109 F. 2d 463; Edwards v. United States, 6 Cir., 140 F.2d 526, 531; Equitable Life Assur. Soc. v. Alvarez, 5 Cir., 141 F.2d 551; Madden v. Met. Life Ins. Co., 5 Cir., 138 F.2d 708, 709, 151 A.L.R. 984. See 4 Couch on Insurance, § 889.

3. Wharton v. Aetna Life Ins. Co., supra; Atlantic Life Ins. Co. v. Stringer, 5 Cir., 28 F.2d 665.

which was approximately eleven months after the reinstatement of the policy, and those who knew him and saw him frequently testified that he did not appear to be sick and none of his fellow workmen heard him complain of illness. When the insured filed his application for reinstatement in October 1947 he did not mention that he had consulted Dr. Beall for stomach trouble, which the doctor advised was nonexistent, but it is not unreasonable to infer that when the operation in the fall of 1948 revealed the existence of cancer that it then, for the first time, became apparent to the insured that the symptoms for which he had consulted Dr. Beall were more than imaginary; whereas, at the time he made the application for reinstatement the insured had every reason to believe that the ailments of which he complained to Dr. Beall were of a minor, inconsequental nature. And it is not unreasonable to infer from the evidence that the applicant, in good faith, did not consider his visits to the doctor of sufficient importance to report them, if, indeed, he had this detail in mind when he signed the prepared application for reinstatement. The evidence here, by way of explanation, is that the plaintiff and the insured had no intention of deceiving and defrauding the Government. Viewing the evidence as a whole in the light of attendant circumstances, we cannot say that the evidence preponderates so overwhelmingly in favor of the Government as to warrant the direction of a verdict in its favor. The question of insured's fraud on the Government was for the jury, not the court.

■ Further error is assigned to the action of the trial court in excluding the testimony of the witness A. C. McClure as to declarations made by the insured relating to what Dr. Beall had told him regarding a diagnosis of insured's condition. The testimony was clearly hearsay and the court did not err in excluding it on that ground.

For the reasons stated the judgment is reversed and cause remanded for further proceedings not inconsistent with this opinion.