Nicholas B. CORNWELL
and
Lieselotte Cornwell, Plaintiffs,

v.

C. I. T. CORP. OF NEW YORK,
a corporation,
and
Capitol International Airways, Inc.,
a corporation, Defendants.

Civ. A. No. 2093–73.

United States District Court,
District of Columbia.

March 25, 1974.

Benjamin W. Cotten, Washington, D. C., for plaintiffs.

Edison W. Dick, Washington, D. C., for defendants.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The instant action is before the Court on Defendants' Motion to Dismiss the Complaint under Fed.R.Civ.P. 12(b) on the grounds that there is lack of jurisdiction over one defendant and plaintiffs have failed to state a claim upon which relief can be granted with respect to the remaining defendant. Defendants' Motion raises two issues that concern, first, the jurisdictional reach of the long-arm statute of the District of Columbia, 13

D.C.Code § 13–423(a) (Supp. V., 1972) [1] and, second, the statute of limitations applicable to an action arising from the alleged negligent maintenance and operation of an aircraft which crashed while attempting to take off from the Anchorage International Airport in Anchorage, Alaska on November 27, 1970.

The facts in this case, to the limited extent they have been set forth in the pleadings, show that Plaintiff Nicholas Cornwell was a passenger on the ill-fated flight, sustaining serious injury. He has brought this lawsuit jointly with his wife, Lieselotte Cornwell, in pursuit of a judgment for his injuries and the suffering both he and his wife have endured in consequence thereof. Both plaintiffs describe themselves as "individuals and citizens of the Commonwealth of Virginia". Defendants in the case at bar are the C.I.T. Corporation of New York (hereinafter C.I.T.), owner of the airplane, and Capitol International Airways, Inc., operator of the airplane, which is a Tennessee corporation. C.I.T. is also a foreign corporation but has a registered agent, C.T. Corporation System, in the District. Plaintiffs have asserted federal jurisdiction on the grounds of diversity of citizenship of the parties and an amount in controversy in excess of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332. For the reasons set forth below, the Court shall quash service on Capitol Airways, Inc., and dismiss as to Capitol, without prejudice. The Motion to Dismiss as to C.I.T. shall be taken under advisement pending the submission of briefs by the parties in accordance with this Opinion and the Court's Order of even date.

## I

Plaintiffs base their assertion of personal jurisdiction over defendant Capitol on Section 13–423(a)(3) of the District of Columbia Code, set forth in Note 1 of this Opinion. Defendant argues that this Court lacks jurisdiction because Capitol was not "transacting any business within the District of Columbia." Service of process on Capitol was effected by certified mail pursuant to D.C.Code § 13–424, 13–431 (1973). The "transacting business" section of the statute has been given "broad interpretation, normally limited only by due process considerations". Margoles v. Johns, 483 F.2d 1212 (D.C.Cir.1973). However, the Superior Court of the District of Columbia recently held that under this section the "defendant or his agent must be physically present in the District of Columbia transacting any business therein" to be amenable to jurisdiction under the provisions of 13 D.C.Code § 423(a)(1) (Supp. V., 1972). National Products Specialist, Inc., v. Bristol Yacht Company, Sup.Ct.D.C.Civ. il No. 7504–72, March 28, 1973. The instant case raises no problem of degree with respect to business contacts since it is clear from the memoranda filed in support of and in opposition to Defendants' Motion that Capitol has taken no action that constitutes a contact, much less a "physical presence" in the District of Columbia. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Mosely v. Nationwide Purchasing, Inc., *supra*. Although Plaintiffs have made reference to Capitol's listing an address and telephone number in the District of Columbia telephone directory and the World Aviation Directory, 1972–3 Ed., both publications show the address to be in Arlington, Va. Thus such listings fail to provide the requisite contact. Moreover, as noted earlier, Capitol is a Tennessee corporation and is not registered to do business in Washington, D.C. See Hargrove Displays, Inc., v. Rohe Scientific Corp. et al., 316 A.2d 330, District of Columbia Court of Appeals (1974). Its primary place of business is Smyrna, Tennessee. Al-

---

1. 13 D.C.Code 13–423(a) (Supp. V., 1972) reads in pertinent part:

(a) A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia . . .

though it has an office in Arlington, Virginia, Capitol has none in the District, nor does it employ personnel or "operate aircraft into or out of the District . . ." Topham Affidavit in Support of Motion to Dismiss. Finally, Capitol has not entered into any contracts, nor does it have any outstanding obligations to perform any services within the District of Columbia. If, indeed, Capitol has any nexus with the District insofar as plaintiff's fatal flight is concerned, there is nothing in the record to so indicate. On the facts presented, it is readily apparent that Capitol has simply not "transacted any business" in the District of Columbia.

In light of Plaintiffs' failure to allege facts sufficient to satisfy their burden of proof in establishing jurisdiction over Capitol, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Mosely v. Nationwide Purchasing, Inc., 485 F.2d 418 (T.E.C.A.1973), the Court holds that Capitol is not subject to in personam jurisdiction under the "transaction business" section of the D.C. long-arm statute and service of process by mail was not authorized by Sections 13–424 and 13–431 of the Code. Thus, the return of service upon Capitol shall be quashed and plaintiffs' Complaint dismissed as to Capitol, without prejudice to plaintiffs in the event they can establish jurisdiction elsewhere.

## II

The remaining defendant, C.I.T., predicates its Motion to Dismiss upon the theory that plaintiffs' right of action is barred by the Virginia and/or Alaska statutes of limitations for which the instant type of action is two years, or by the Warsaw Convention (International Air Transportation), 49 Stat. 3000, TS 876 (Oct. 12, 1929), which has a two-year limitation on the commencement of suits arising from certain international airplane flights. The District of Columbia's general statute of limitations is three years. D.C.Code § 12–301 (1973). Defendant regards the choice of the ap-

plicable limitation of actions as a conflict of laws problem governed by the so-called "interest analysis" approach which has been recently employed by the United States Court of Appeals for the District of Columbia in the area of tort law. Tramontana v. S.A. Empresa De Viacao Aerea Rio Grandense, 121 U.S. App.D.C. 338, 350 F.2d 468, 471–473 (1965). See also Farrier v. May Department Stores Company, 357 F.Supp. 190 (D.D.C.1973). On the basis of the case as presently constituted, the Court agrees. Since the Court of Appeals decision in *Tramontana* was rendered prior to February 1, 1971, the date on which the District of Columbia Court of Appeals became the highest court of the District of Columbia pursuant to the District of Columbia Court Reform and Criminal Procedure Act of 1970, the conflict of law rule articulated therein constitutes the case law of the District of Columbia. See MAP v. Ryan, 285 A.2d 310 (D.C.App.1971). It should be pointed out, however, that soon after its decision in *Tramontana*, the United States Court of Appeals availed itself of what is known as the "contacts analysis" in resolving a choice-of-laws problem arising in the area of contracts. Fox-Greenwald Sheet Metal Co., v. Markowitz Bros., Inc., 147 U.S.App.D.C. 14, 452 F.2d 1346, 1353–1354 (1971). There the Court passed over the law of the District of Columbia in resolving a contract between a subcontractor and a sub-subcontractor, and chose to apply the law of the jurisdiction having the "more essential contacts with the contract transaction." 452 F. 2d at 1354. The principal issue in that case concerned the construction of a contract's nonassignability clause and the Court followed the Maryland approach to construction of such provisions.

Most recently, however, our Court of Appeals has once again made use of the "interest analysis" to determine the relative interests of the forum and another jurisdiction, with a relationship to the controversy, in the application of their respective rules of law pertaining to the

apportionment of an inheritance tax. Mazza v. Mazza, 154 U.S.App.D.C. 274, 475 F.2d 385 (1973). Thus, with that formula fresh in mind, and fully aware of our responsibility to follow the conflict of laws rule prevailing in the District, Klaxon Co. v. Stentor Electric Mfg. Co., 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1941); Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Court turns to a consideration of the prevailing interests of the states involved in the controversy at bar.

At the outset, it is important to clarify the conflicts question in this case, since, as plaintiffs suggest, there are precedents in this jurisdiction that stand for the proposition that the D.C. statute of limitations is exempt from a choice of laws analysis on the grounds that a "limitation on the time of suit is procedural and is governed by the law of the forum." Kaplan v. Manhattan Life Ins. Co., 71 App.D.C. 250, 252–253, 109 F.2d 463, 465–466 (1939); Filson v. Fountain, 90 U.S.App.D.C. 273, 274, 197 F.2d 383, 384 (1952); Wells v. Alropa Corp., 65 App.D.C. 281–282, 82 F.2d 887–888 (1936). This principle has also been discussed in a more current decision by our Circuit Court. See Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc., *supra.*

However, *Fox-Greenwald* is not controlling and will not be applied here. It is this Court's conclusion that in its most recent decision in Nyhus v. Travel Management Corporation, 151 U.S.App. D.C. 269, 466 F.2d 440 (1972), the Court of Appeals discards the law of the forum approach to statute of limitations questions where it can be demonstrated that other jurisdictions have a prevailing interest in the application of their laws to a case which is brought in this Court.

■ The Court is not unmindful of its function to "ascertain what the state law is, not what it ought to be." Klaxon v. Stentor Electric Mfg. Co., Inc., 61 S. Ct. at 1022. In keeping with that duty, the Court finds that the consideration of statute of limitations question afforded by the Court of Appeals in *Nyhus* points unambiguously to what the law is, if not what the law is becoming. We refer specifically to the language which appears at note 11 of the Opinion, which reads in pertinent part:

"The record does not disclose where the employment contract was made or where it was to be performed. The law of the District of Columbia—the forum—*thus* governs the determination as to whether the action was barred by the statute of limitations, as well as all other determinations respecting application of the statute." 466 F.2d at 443 (emphasis added).

In other words, the Court of Appeals seems to be saying, *if* the record were to disclose a significant nexus between the contract at bar and another jurisdiction, the Court would look to the law of that jurisdiction in determining the limitations on the contract action, the law of the forum notwithstanding. Thus, the choice-of-laws rule in the District of Columbia shall apply to conflicting statutes of limitations where it is demonstrated that a jurisdiction outside the forum has a relationship to the controversy that warrants an evaluation of the interest of such jurisdiction in the application of its own rule of law. See Mazza v. Mazza, *supra.*

In consequence to the abandonment of the outdated notion that statutes of limitations are "procedural" in character, the door is now open in this jurisdiction for a rational consideration of the limitations question that takes into account the justified expectation of the parties in believing themselves safe from old claims. If, as plaintiffs recommend, we were to follow the old rule on the basis of the reference in *Fox-Greenwald*, the Court would be in the anomalous position of allowing plaintiffs to revive a claim that is outlawed in the states where they reside and where the alleged negligence and resulting accident occurred by bringing a diversity suit in the District of Columbia where the peri-

od of limitations is longer. The result is transparently inequitable, since it has the effect of exposing the defendant to a claim which he was entitled to consider as in repose. See Farrier v. May Department Stores, *supra*; Ehrenzweig, Conflict of Laws, § 162 (1962). Therefore, the Court would only apply the D. C. Statute of Limitations if that was the result called for under the "interest analysis" formula of the local conflict of laws rule.

The issue here of whether in a tort case the forum should adopt the statute of limitations of another jurisdiction where the parties reside or where the accident occurred is not a question of first impression in this jurisdiction. In the case Farrier v. May Department Stores Company, Inc., *supra*, (Opinion per Parker, J.), this Court held that Virginia's interest in protecting domiciliaries from stale claims compelled the application of its statute of limitations to a tort case, brought by a Virginia resident against a corporation engaged in business both in the state of Virginia and the District of Columbia, that arose from an alleged act of negligence which occurred in Virginia. The facts of the case at bar are different in that all the parties reside or do business in separate jurisdictions, and the accident occurred in still another. Since the record does not show that C.I.T. does business in Virginia as well as in the District, the reasoning of the Court in *Farrier* has limited application here.

The District of Columbia has no relationship to the instant dispute aside from the fact that C.I.T. has an agent here and, therefore, is subject to service of process. No facts concerning the alleged negligence and the resulting injury otherwise link the forum to the dispute. Alaska, on the other hand, may have a substantial interest in protecting its courts from the prosecution of stale claims arising out of accidents within its boundaries. However, on the paucity of facts presented, the Court is reluctant to embark on an analysis of this and other interests Alaska might have in the

application of its statute of limitations to the instant dispute. The Court is particularly concerned with the interface, if any, between "aerospace law", as plaintiffs call it, or the Warsaw Convention and the case at bar. It may very well be established, as further facts emerge, that the Warsaw Convention treaty preempts the state and District of Columbia limitations on actions discussed above. Therefore, in an effort to fully resolve the important questions raised by defendant's Motion, the Court finds it necessary to ask for further briefing of the questions discussed in Part II of this Opinion, as set forth in the Order of this Court entered on even date herewith.