MANATEE CABLEVISION
CORPORATION, Plaintiff,

v.

W. Theodore PIERSON et al.,
Defendants.

Civ. A. No. 76–1963.

United States District Court,
District of Columbia.

June 17, 1977.

Thomas P. Meehan, David Barmak, Washington, D. C., for plaintiff.

James C. Gregg, Gary W. Brown, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This lawsuit is brought by Manatee Cablevision Corporation, a Florida corporation, against 17 attorneys who allegedly were partners in the Washington, D. C. law firm of Pierson, Ball & Dowd at the time pertinent to the allegations contained in plaintiff's complaint. The complaint, generally speaking, charges defendants with attorneys' malpractice. Plaintiff's claim is rendered in three counts which allege, respectively, breach of contract, breach of fiduciary obligations, and negligence. Jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332.

Plaintiff's complaint arises out of the law firm's representation of plaintiff in an antitrust lawsuit filed in 1972 in the United States District Court for the Middle District of Florida. Plaintiff alleges that defendants in effect forced plaintiff to accept an unfavorable settlement of a portion of plaintiff's claim in the Florida litigation. This result was achieved, plaintiff alleges, when defendants insisted that plaintiff either accept the proposed settlement or pay defendants a substantial amount of money, not contemplated by the parties' original contingency fee arrangement, to continue with the litigation. Plaintiffs also allege that, after the aforementioned settlement was achieved, defendants indicated that they would not continue to represent plaintiff for the remainder of its claim unless plaintiff modified the contingency fee arrangement between the parties. Plaintiff alleges that in early 1974 it terminated its agreement and relationship with defendants, as a result of the aforementioned breaches on defendants' part.

This suit was filed on October 22, 1976. One day earlier, plaintiff had filed a nearly-identical suit in the United States District Court for the Middle District of Florida. By consent of the parties, the instant case was stayed pending action in the Florida litigation. On February 1, 1977, after defendants had filed and plaintiff had opposed a motion to dismiss that action because, *inter alia*, it was barred by the Florida statute of limitations, plaintiff voluntarily dismissed the Florida case. The motion to dismiss was pending when plaintiff filed its voluntary dismissal.

The aforesaid voluntary dismissal removed any cause for further stay of this case. The case is now before the Court on defendants' motion to dismiss. In support of their motion, defendants claim that: (1) the Florida statute of limitations applies to and bars this case; (2) even if the District of Columbia statute of limitations, rather than the Florida statute, applies, the action is nevertheless time-barred; (3) venue is not proper in this district.[1] For the reasons that follow, the Court will deny defendants' motion in full.

## I. *The District of Columbia's Statute of Limitations Applies To This Litigation.*

■ The threshold question in this motion is whether the Court should automatically adopt the statue of limitations of the forum, i.e., the District of Columbia, or whether the Court should instead perform an "interest analysis" in determining whether the District of Columbia's limitations period or Florida's statute of limitations should be applied. *See Farrier v. May*

---

1. Defendants have moved several times to quash plaintiff's attempts at service of process. Except as noted below, these motions appear now to be moot (and both plaintiff and defendants have so indicated) in light of the fact that each defendant has been served personally. The Court will therefore refrain from commenting upon the adequacy of plaintiff's prior efforts at service of process.

One defendant—Robert E. Hodson—continues to maintain that service should be quashed as to him. Service was achieved as to Hodson by leaving a copy of the summons and the complaint with Hodson's wife at their residence in Maryland. Plaintiff maintains that such method of service is authorized by Fed.R. Civ.P. 4(e), read in conjunction with 13 D.C. Code §§ 422, 423(a)(1)–(3), 424, and 431(a)(1) and D.C.Super.Ct.Civ.R. 4(e). The Court agrees, and in light of defendants' failure to respond to plaintiff's explanation that service was appropriate, the Court finds that defendant Hodson was properly served.

*Department Stores Co.,* 357 F.Supp. 190 (D.D.C.1973) (employing "interest analysis" approach). In deciding this question, the Court must, of course, apply the conflicts of laws rule of the forum, *i.e.,* the District of Columbia. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Court has concluded that the long-standing and still-viable rule in the District of Columbia is that the statute of limitations of the forum must be automatically applied, and an "interest analysis" is therefore inappropriate.

The Court notes first that the result it reaches herein has been the traditional approach in the District of Columbia for many years. *See Filson v. Fountain,* 90 U.S.App. D.C. 273, 197 F.2d 383 (1952); *Universal Airline, Inc. v. Eastern Air Lines, Inc.,* 88 U.S.App.D.C. 219, 188 F.2d 993 (1951); *Kaplan v. Manhattan Life Insurance Co.,* 71 App.D.C. 250, 109 F.2d 463 (1939); *Wells v. Alropa Corp.,* 65 App.D.C. 281, 82 F.2d 887 (1936); *Fowler v. A & A Co.,* 262 A.2d 344 (D.C.App.1970); *Namerdy v. Generalcar,* 217 A.2d 109 (D.C.App.1966). The traditional approach was confirmed by the United States Court of Appeals for the District of Columbia Circuit in a 1971 opinion authored by Judge Spottswood W. Robinson III. *See Fox-Greenwald Sheet Metal Co. v. Markowitz Brothers, Inc.,* 147 U.S.App.D.C. 14, 452 F.2d 1346, 1357 (1971). However, less than a year later, Judge Robinson cast some doubt on the traditional approach in a footnote in *Nyhus v. Travel Management Corp.,* 151 U.S.App.D.C. 269, 466 F.2d 440, 443 n.11 (1972):

> The record does not disclose where the employment contract was made or where it was to be performed. The law of the District of Columbia—the forum—*thus* governs the determination as to whether the action was barred by the statute of limitations, as well as all other determinations respecting application of the statute. . . .

**2.** *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.App. 1971).

**3.** One other decision in this district has applied the interest analysis approach in determining which statute of limitations should apply. *See*

(Emphasis added.) This language seemed to suggest that if the record *had* revealed that another jurisdiction had an interest in the contract in question, the court would have found it appropriate to perform an "interest analysis" in determining which jurisdiction's statute of limitations applied.

Relying in large part on the above-quoted footnote in *Nyhus,* this Court adopted the interest analysis approach when it confronted the issue three years ago in *Cornwell v. CIT Corp.,* 373 F.Supp. 661 (D.D.C.1974). However, for the reasons enumerated below, the Court now believes that it was incorrect in its prior conclusion on this issue and that the viability of the traditional approach continues in the District of Columbia. First, the Court notes that in 1973, the District of Columbia Court of Appeals (since 1971 "the highest court of the District of Columbia,[2]")re-affirmed the traditional approach, albeit in dictum, in *May Department Stores Co. v. Devercelli:*

> This issue [a claim raising the bar of the statute of limitations] being procedural is governed by the statute of limitations of the forum. *Kaplan v. Manhattan Life Ins.* . . . .

314 A.2d 767, 773 (D.C.App.). Although *May* was issued shortly before this Court's opinion in *Cornwell,* it was apparently not brought to the Court's attention, for the Court did not refer to *May* in rejecting the traditional approach.[3]

In addition, the Court now believes it placed undue emphasis on the passing reference in *Nyhus* quoted above. As mentioned above, the *Nyhus* opinion was issued by the Court of Appeals less than a year after the same court, with the same judge authoring the opinion, had re-affirmed the long-standing traditional approach. *Fox-Greenwald, supra,* 452 F.2d at 1357. It would seem that if the court intended to overthrow such long-standing authority, it would have done

*Farrier v. May Department Stores Co.,* 357 F.Supp. 190 (D.D.C.1973). The *Farrier* decision came down before the District of Columbia Court of Appeals' decision in *May Department Stores Co. v. Devercelli, supra.*

so in much more clear and complete fashion than the obscure footnote in *Nyhus*. Moreover, even the authorities cited immediately after the portion of *Nyhus* quoted above cast doubt on the proposition that the court intended to overthrow the traditional approach, for the court cites for support the very cases—*Filson, supra; Kaplan, supra;* and *Wells, supra*—that such a decision would have cast aside.

■ In *Cornwell*, this Court indicated that one of the benefits of adopting the interest analysis approach was that "the door is now open in this jurisdiction for a rational consideration of the limitations question . . .." 373 F.Supp. at 664. The Court still believes that, from a policy standpoint, the "interest analysis" approach is a far better method of resolving conflicts between statutes of limitations. However, the Court is mindful of its duty to apply, not make, the law in this area. As one court stated recently in facing the very same issue:

> [T]he diversity court must hesitate in extending the law of the forum state in the absence of some indication from the courts of the forum that the extension would be desirable.

*Kalmich v. Bruno,* 404 F.Supp. 57, 66 (N.D. Ill.1975). This Court reads *May, supra,* as indicating that the traditional approach is still viable in the District of Columbia. Accordingly, the Court has no choice but to apply automatically the statute of limitations of the forum, the District of Columbia, to the instant litigation.

II. *Plaintiff's Cause of Action Is Not Barred By The District Of Columbia's Statute Of Limitations.*

■ The parties agree that if the District of Columbia's statute of limitations is applicable to this case (and the Court has so held, *supra* ), then the particular limitations pertinent herein are the three-year periods specified in 12 D.C. Code §§ 301(7) & (8). While the parties disagree as to precisely

when plaintiff's alleged cause of action arose, they do agree that the cause of action arose *no earlier* than October 24, 1973.[4] Since the complaint herein was filed on October 22, 1976, less than three years after the cause of action arose, it is clear that the case was timely filed *if* the *filing* of the complaint was sufficient to toll the statute. However, if some additional act beyond filing was necessary to toll the statute, the complaint might well be time-barred. The Court holds, for the reasons set forth below, that the filing of the complaint was indeed sufficient to toll the statute.

Defendants maintain that the Court should apply the District of Columbia's local rule as to tolling the statute of limitations. That rule, defendants assert, is set forth in *Criterion Insurance Co. v. Lyles,* 244 A.2d 913, 914 (D.C.App.1968):

> In the District of Columbia, a civil action is begun by filing a complaint with the clerk of the trial court. Customarily, the clerk issues and delivers the summons to plaintiff's attorney, whose duty is then to give it, together with a copy of the complaint, to the United States Marshal for service. Taking cognizance of this local custom, courts in this jurisdiction have developed the rule that an action is "commenced" when the complaint is filed and the summons is issued and delivered to the Marshal for service. Ordinarily, the applicable statute of limitations stops running at this point. . . . Our rule and the comparable rule in other jurisdictions are based upon the principle that an action commences when a plaintiff has done all that is incumbent upon him toward the issuance and service of process.

In the instant case, plaintiff did not choose to have the marshal serve the complaint. Instead, plaintiff attempted service by registered mail pursuant to D.C.Super.Ct. Civ.R. 4(c)(3). However, plaintiff did not mail copies of the complaint to defendants until October 28, 1976. Thus, defendants assert, plaintiff did not take the last step

---

4. Defendants claim that plaintiff's alleged cause of action arose in its entirety on October 24, 1973. Plaintiff claims that a portion of its

claim arose on October 31, 1973, and that the remainder of the claim arose in November and December, 1973, and early 1974.

"incumbent upon him toward the issuance and service of process," *id.,* until October 28, 1973, four days after the statute had run. Thus, defendants urge, the action was not commenced within the applicable limitations period.

Assuming *arguendo* defendants are correct that plaintiff's alleged cause of action arose in its entirety on October 24, 1973—and, as noted above, that is a disputed question—the Court concludes nevertheless, that plaintiff's complaint was timely filed. Initially, the Court notes that, for two reasons, the so-called local rule as set forth in *Criterion* apparently does not apply to this case. First, as indicated in the excerpted passage above, *Criterion* speaks specifically to cases in which the marshal serves the complaint; that was not the case herein, and defendants can only maintain the applicability of *Criterion* by invoking the broad, general language at the end of the passage quoted above. Second, the *Criterion* court noted that:

> In Federal courts, it is customary for the clerk to deliver the summons directly to the Marshal for service and the statute of limitations ceases to run when the complaint is filed with the clerk's office.

244 A.2d at 914 n.3. Thus, the court's statement of the local rule for commencing an action specifically excludes from the rule's operation those complaints, such as in the instant case, filed in federal court.

Moreover, even if the local rule was indeed intended to apply to the instant case, the Court would nevertheless conclude that it is not bound by that local rule. Rule 3 of the Federal Rules of Civil Procedure provides: "A civil action is commenced by filing a complaint with the court." The Court of Appeals for this circuit noted recently: "As this provision is generally construed, filing tolls the statute of limitations on federal causes of action . . . ." *Walko Corp. v. Burger Chef Systems, Inc.,* D.C. Cir., 554 F.2d 1165 at 1167 n.19 (1977). However, as the court noted:

> such a construction is contingent upon "whether it is competent for the Supreme Court, exercising the power to make rules

of procedure without affecting substantive rights, to vary the operation of the statute of limitations."

*Id., quoting* 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1056, at 177–78 (1969). The Supreme Court faced this issue in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) and held that federal courts had to look to state law to ascertain when the applicable statute of limitations is tolled. Thus, a Kansas statute which provided that an action commenced for purposes of the statute of limitations only upon service of process took priority over Fed.R. Civ.P. 3. Since *Ragan* was decided, however, developments in the law, including Supreme Court case law, have indicated that *Ragan* may no longer be sound law. Particularly, *Ragan* is seen by many as having been overruled *sub silentio* by *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). As the Court of Appeals explained in *Walko:*

> At issue in *Hanna* was whether in a diversity case service of process must be made in the manner described by state law or that of the Federal Rules. *Hanna's* holding for application of the Federal Rule is perceived by many to at least question *Ragan's* choice of state tolling rules over those implicit in Rule 3.

*Walko, supra,* at 1168 (footnotes omitted).

As the court of appeals documented in *Walko,* there is by now a profound division in the circuit courts of appeal and between commentators as to whether the *Ragan* rule still applies or Rule 3 instead governs the tolling of statutes of limitations in diversity cases in the federal courts. *See* authorities cited in *Walko, supra,* at 1168 n.25. However, the circumstances of *Walko* made it unnecessary for this circuit to face the issue; thus, while indicating that in appropriate circumstances "a reevaluation of *Ragan's* impact might be in order," the Court specifically left the issue open. *Id.* at 1170 and n.36.

Without guidance from any pertinent decision in this circuit this Court must therefore decide which approach it believes

to be correct. The arguments on the continued vitality of *Ragan, pro* and *con,* have been set forth in detail by the many courts which have considered the issue. *See, e.g.,* authorities cited in *Walko, supra,* at 1168 n.25. The Court thus sees no need to repeat the arguments here. It is sufficient to say merely that the Court agrees with Professors Wright and Miller that:

> It is certainly difficult to reconcile the reasoning in *Hanna* with that in *Ragan;* and it is worthy of note that in his concurring decision in *Hanna,* Justice Harlan expressed concern over the Court's failure to deal sufficiently with *Ragan* and stated that in his view the *Ragan* decision "was wrong."

4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1057, at 189 (1969) (footnotes omitted).[5] As the Second Circuit Court of Appeals wrote in departing from *Ragan:*

*Hanna* does represent a modification, or at least a refinement, of the "outcome determination" test as applied in *Ragan,* and it does enunciate a policy favoring the supremacy of the Federal Rules which is not discussed in *Ragan.*

*Sylvestri v. Warner & Swasey Co.,* 398 F.2d 598, 605 (1968). This Court joins those authorities which have concluded that *Ragan* has been substantially overruled by *Hanna* and that Rule 3 governs the commencement of actions in federal court for purposes of statutes of limitations.[6]

Thus, in summary, the Court concludes that even if defendants are correct that plaintiff's cause of action arose in full on October 24, 1973, plaintiff brought a timely action by filing the complaint herein on October 22, 1976.[7]

## III.  *Venue Is Proper In This District.*

In diversity actions, venue is proper in the district "where all plaintiffs or all de-

---

**5.** Professors Wright and Miller conclude, however, that "it seems the safer course to assume that the *Ragan* decision is still authoritative," though they also note: "Perhaps the day will come when the Court will inter *Ragan*; there will be few mourners." 4 C. Wright & A. Miller, *supra,* § 1057, at 191. Professor Moore's view, on the other hand, is that "*Ragan* has probably been overruled." 2 J. Moore and J. Lucas, *Moore's Federal Practice* § 3.07, at 764 n.1 (Supp. 1976–77).

**6.** As the Court of Appeals for this circuit noted in *Walko, supra* : "Ragan's questionable validity has also prompted some courts to make nice distinctions limiting its effect." At 1168 n.25. For instance, in *Prashar v. Volkswagen of America, Inc.,* 480 F.2d 947 (8th Cir. 1973), *cert. denied,* 415 U.S. 994, 94 S.Ct. 1596, 39 L.Ed.2d 891 (1974), the court noted that "the *Ragan* Court specifically considered the fact that under Kansas law the commencement of actions was an integral part of the statute of limitations." *Id.* at 951. Finding this factor crucial, the court held that the South Dakota commencement of actions statute at issue in *Prashar* was *not* an integral part of the state's statute of limitations:

> The defendants have not pointed to, nor have we found, any state policy expressed in South Dakota similar to that found by the court . . . in . . . *Ragan* . . . where the Kansas statute of limitations was construed to be integrated with the rule relating to commencement of actions.

*Id.* at 953. Accordingly, the *Prashar* court held that Fed.R.Civ.P. 3, not the state statute, governed commencement of actions in a federal

diversity case in South Dakota. *Accord, Chappell v. Rouch,* 448 F.2d 446 (10th Cir. 1971).

Were this Court to apply such an analysis herein, the obvious conclusion would be that the District of Columbia rule on commencement of actions can in no way be interpreted as an integral part of the District of Columbia's statute of limitations. Unlike the commencement rules in *Ragan* and *Prashar,* the District of Columbia's rule is not even statutory, but was instead court-created and based on "local custom." *Criterion, supra,* 244 A.2d at 914.

**7.** Defendants have moved to strike the Affidavit of Service of Barbara Lee Blincoe filed by plaintiff on March 11, 1977. The affidavit purports to show that copies of the complaints herein were originally sent to defendants by registered mail, restricted delivery, return receipt requested. Defendants question the veracity of the affidavit as to the use of restricted delivery and claim that because the complaints "were required to be sent in that manner in order to be the last act necessary for proper service of process, the statute of limitations continued to run" not only past the mailing date but until service was properly achieved (according to defendants) in March 1977. The serious allegations of misrepresentation made by defendants would require an evidentiary hearing to resolve, assuming the Court were to agree that mailing by restricted delivery was required. However, in light of the Court's conclusion that the statute of limitations was tolled by filing of the complaint, pursuant to Fed.R. Civ.P. 3, the entire dispute has been mooted.

fendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). Plaintiff concedes that neither it nor all of the defendants reside in this district, but plaintiff maintains that venue is proper in this district because the claim arose here. For the reasons set forth below, the Court concludes that if the allegations of plaintiff's complaint and supporting affidavits are taken as true, which they must be for purposes of this motion to dismiss,[8] plaintiff's claim arose in this district for purposes of the venue statute.

Courts are divided on the question of whether the statutory language "in which the claim arose" means that venue is proper only in the district where the *largest* part of the claim arose or in a district where a *substantial* portion of the claim arose. *See Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886 (S.D.N.Y.1974). Thus, for example, in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa. 1968), an antitrust action involving an alleged conspiracy to fix prices, the plaintiff claimed that the action could be brought in any district in which the defendant had sold plumbing fixtures at a price inflated by the alleged conspiracy. The court disagreed, finding instead that " 'where the claim arose' should be dependent upon where the contacts weigh most heavily." *Id.* at 260. In *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir. 1973), the court took a somewhat different approach:

> The Eighth Circuit has taken the view that the statute should be construed in a way that will best serve the convenience of the aggrieved party, and it has come close to endorsing in terms what some other courts seem to be doing in practice—finding that a claim arose in a district if a substantial part of the events or omissions occurred there, even though an

other district might have a strong or stronger claim to be the district specified by the statute.

15 C. Wright, A. Miller, and E. Cooper, *Federal Practice & Procedure,* § 3806, at 34, *discussing Gardner Engineering Corp., supra.*

■ Regardless of the test that is applied, this Court believes that the instant case was properly brought in this district. Plaintiff alleges that defendants' firm is located in this district; that settlement negotiations which resulted in the "forced settlement" of plaintiff's antitrust claim took place in this district; that defendants communicated that settlement offer to plaintiff from this district; that defendants accepted the settlement offer on behalf of plaintiff in this district; and that defendants signed a formal release letter in this district. Plaintiff also alleges that the contract between plaintiff and defendants with respect to the antitrust case was entered into in this district, and subsequently breached in this district; that even before the making of said contract, defendants had been retained by plaintiff in this district to represent plaintiff before the Federal Communications Commission in this district; and that "most" subsequent meetings between plaintiff and defendants took place in this district. Finally, plaintiff alleges that defendants' sole office and all of their staff are in this district, and that the major portion of the work giving rise to plaintiff's claim was performed at said office. To be sure, there are some Florida contacts as well: plaintiff resides there, and the litigation which gave rise to plaintiff's claim was before a federal court in Florida. But these Florida contacts are far outweighed by the alleged contacts with this district. Accepting these allegations as true—which, as pointed out above, is the Court's duty—there is no doubt that defendants' motion to dismiss for improper venue must be denied.[9]

---

**8.** *See Gardner v. Toilet Goods Assoc.,* 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

**9.** Defendants have claimed that some of plaintiff's allegations herein with respect to contacts with this district are inconsistent with plain-

tiff's allegations of Florida contacts made in plaintiff's suit against these defendants filed in Florida on October 21, 1976, and subsequently dismissed voluntarily. *See* page 572, *supra.* Strictly speaking, allegations made outside of the record are irrelevant to the Court in decid-

### IV. *Conclusion*

The District of Columbia statute of limitations applies to this action. Plaintiff's case was timely filed and was not barred by the District of Columbia statute of limitations. Venue is proper in this district. Accordingly, defendants' motion to dismiss must be denied in full. An Order in accordance with the foregoing will be entered of even date herewith.

ing this motion to dismiss. Should defendants desire to question the accuracy of plaintiff's allegations herein, that can be done, after appropriate discovery, on a motion for summary judgment or at an evidentiary hearing. For now, as noted above (see note 8, *supra*), the Court must take plaintiff's allegations as true.